STOCKBRIDGE IRON COMPANY *vs.* HUDSON IRON COMPANY.
HUDSON IRON COMPANY *vs.* STOCKBRIDGE IRON COMPANY.

To a bill in equity filed by the grantor to enforce a reservation in a deed, the grantee answered that the terms of the reservation were inserted by a mutual mistake of the parties and defeated their intention; and filed a cross bill to reform the deed upon a like allegation. *Held*, on the trial of issues for a jury upon the cross bill, that the grantee had no ground of exception to instructions to the jury that the intention and mistake must be proved beyond a reasonable doubt, and that, in such a case, this meant a degree of proof which they would act upon in the most important affairs of life, and which would satisfy their judgments and consciences of the fact to be proved.

To a bill in equity filed by the grantor of land containing an ore-bed, to enforce a reservation in the deed, of a right to mine a certain quantity of the ore, the grantee answered that the parties intended to insert in the deed a limitation of the right to the supply of certain furnaces and omitted to do so by mutual mistake; and filed a cross bill to reform the deed upon a like allegation. Upon the cross bill, the court framed an issue for the jury, Did the parties intend to insert in the deed, and omit to do so by mistake, a clause by which the right was limited to the supply of the furnaces ? And at the trial, upon motion of the grantee, and against the objection of the grantor, a second issue was ordered, Was it the understanding, intent and agreement of the parties, that by the contract of purchase and sale of the land the right was limited to the supply of the furnaces, and was the deed delivered and accepted in the belief and with the understanding that it gave legal effect to such understanding, intent and agreement? At the close of the evidence, the grantor contended that it showed that the parties agreed to deliver and accept the deed in its present form after a discussion of the question whether its terms did limit the right to the furnaces ; whereupon the judge ordered a third issue, Was the deed delivered and accepted with the mutual intention and understanding that it should be and was in its present form, after the question whether its terms so limited the right had been raised and discussed between the parties? The grantee objected to the submission of this issue; but did not offer, or ask time, to introduce further evidence. The jury answered the first issue in the negative, and the third in the affirmative, and failed to agree upon the second. *Held*, (1) that the submission of the third issue to the jury was a proper exercise of the discretion of the judge; (2) that the second issue was single in law, though depending on two propositions of fact; (3) that the cross bill should be allowed to be amended by adding the allegations of an agreement of the parties antecedent to and independent of the deed, necessary to constitute one of the propositions, the suit having so far proceeded with no objection on the part of the grantor that the cross bill was defective in that particular; and (4) that the second issue was not rendered immaterial by the verdicts upon the first and third issues, but its determination under the amended cross bill was essential to the decision of the suit.

In a deed poll of land containing an ore-bed, a clause "reserving to" the grantor "the right of mining on the granted premises" a certain quantity of ore annually, at a certain duty per ton, licenses him to enter and mine, but saves to him no title in the land, or in the ore before it is mined and separated from the land; does not restrict the grantee from mining at the same time, even to exhaustion of the ore; and may be reformed in equity for variance through mutual mistake from the previous oral contract of the parties, as a reservation, and not an exception from the grant, and therefore not within the statute of frauds.

In a deed by a corporation of land containing a bed of iron ore, a right reserved to the gran⌐⌐r " of mining on the granted premises, for the use of said company," a certain quantity of ore, is assignable, and is not subject to limitation or suspension by extrinsic evidence that the corporation was chartered to manufacture iron only in certain furnaces and work mines only for its own use, and that at the time of the deed it expected and intended to discontinue business.

If one of the parties to a deed which was intended and understood by b th of them to conform to a previous contract, but fails to do so, delays, in an honest and reasonable reliance upon their original construction of the deed, to bring a suit in equity to reform it, for several years after he has notice that the other party denies that construction, the delay is not imputable to him as laches, in defence against the suit.

THE FIRST SUIT was a bill in equity filed December 5, 1868, by the Stockbridge Iron Company, a corporation chartered by this Commonwealth, alleging that on July 20, 1849, said company was seised and possessed of a tract of land containing beds of iron ore, in West Stockbridge, and on that day conveyed it to the Hudson Iron Company, a corporation established under the laws of New York, its successors and assigns, by a deed containing the following clause : " And further reserving to the Stockbridge Iron Company the right of mining on the above granted premises, for the use of said company, an amount of ore not exceeding seven thousand five hundred tons annually at a duty of thirty-seven and a half cents per ton, including all the facilities needful for doing the same ; " that under this clause the Stockbridge Iron Company, its successors and assigns, has a perpetual right to mine and carry away ore from the land, to the extent and upon the terms so provided, and the Hudson Iron Company is bound to refrain from mining and carrying away ore from the land to any extent or in any manner which shall interfere with the said perpetual right ; but that the Hudson Iron Company now denies the said right, and refuses to permit the Stockbridge Iron Company, or its assigns, to exercise it, and is mining and carrying away ore to an extent and in a manner calculated to defeat it ; wherefore the bill prayed for a declaration by the court of the respective rights of the parties under the deed, and for protection of the right of the Stockbridge Iron Company by injunction and otherwise.

By a copy of the deed, which was annexed to the bill, it appeared that, immediately following the granting clauses and pre-

ceding the clause in question, was the following clause : "Excepting, however, from this conveyance, and reserving, one piece of land, two rods square, for a family burial ground, in the southwest corner of the garden on the premises, with a right to pass and repass, on all proper occasions, from the road to said burial ground, that same reservation being made in the prior deeds by which this property has been conveyed."

The answer admitted seisin and possession of the land by the Stockbridge Iron Company on July 20, 1849, and its execution of the deed with the clauses above quoted ; and further alleged as follows :

"At the time of the conveyance to the Hudson Iron Company by the Stockbridge Iron Company, the latter company was taking ore from the premises and manufacturing the same in its furnaces in Stockbridge, under the provisions of its charter, granted by this Commonwealth by the St. of 1841, *c.* 19.* Pending the negotiations for the purchase of the premises by the Hudson Iron Company, it was proposed by the Stockbridge Iron Company to reserve to itself the right to mine and take sufficient ore for the use of its furnaces at Stockbridge. This proposition was strongly objected to by the Hudson Iron Company ; but, it being represented to the Hudson Iron Company by the Stockbridge Iron Company, that, on account of the cost of procuring charcoal, or of bringing anthracite coal to its furnaces, iron could not be profitably made at Stockbridge, and therefore the Stockbridge Iron Company would use the ore under the reserved right for but a few years at most, the Hudson Iron Company finally gave its assent to receive the deed reserving the ore for the use of the Stockbridge Iron Company in its furnaces at Stockbridge. All parties, the Stockbridge Iron Company and the Hudson Iron Company, and the directors and trustees of each, alike understood and intended that the right reserved was to be a right to mine

* By the St. of 1841, *c.* 19, the Stockbridge Iron Company was incorporated "for the purpose of manufacturing pig, cast and bar iron in the town of Stockbridge," and authorized to hold, "for the purposes aforesaid, real estate to the amount of seventy-five thousand dollars, and the whole capital stock of said company shall not exceed one hundred and fifty thousand dollars."

and take so much ore as should be required for the actual use and supply of the furnaces of the Stockbridge Iron Company at Stockbridge, and that only ; and that such use was to be in accordance with represented wants by said company. The deed to the Hudson Iron Company, and the reservation therein, were supposed, and were designed, to carry out this understanding and intention of all parties. The annual production of the Stockbridge Iron Company's furnaces, when in blast, being about three thousand tons of pig iron, and the usual estimate being two tons and a half of ore to one ton of pig iron, the mining right reserved was limited to seventy-five hundred tons annually, at a royalty of thirty-seven and a half cents per ton, the actual value of the ore at the time. The deed was drawn by a director of the Stockbridge Iron Company. When first handed to the agent of the Hudson Iron Company, he objected that it should be made more explicit, and should be prepared by a lawyer ; but he finally received it, the parties representing the Stockbridge Iron Company stating that there was but one Stockbridge Iron Company, and they could not use the ore in any way but in their own furnaces. The deed was not actually executed and delivered till August 28, 1849."

" Immediately after receiving the deed, the Hudson Iron Company took possession of the premises, and began to prosecute, and has ever since prosecuted, thorough, extensive and scientific mining operations there."

" The Stockbridge Iron Company; on the other hand, after its deed to the Hudson Iron Company, did not until very recently, and until it procured an amendment of its charter by the St. of 1864, *c.* 291,* (of the passage of which act the Hudson Iron Company had no notice,) mine or attempt to mine on the premises,

---

* By the St. of 1864, *c.* 291, the Stockbridge Iron Company was " authorized to mine ore, for manufacture or sale, on any land owned by said corporation or on which it has or may acquire an interest ; " " to dispose of such lands or any mining rights of said corporation therein, by sale, lease or otherwise ; " and " to establish works for the manufacture of iron or steel at any such places, in the county of Berkshire, or on the banks of the Hudson River as the stockholders may elect and determine."

and until such recent period supposed, as is believed, that in accordance with the original intent of the parties, and their true, legal and equitable rights, it had long since ceased to have any claim to take ore under and by force of the reservation in said deed."

" Late in the year 1855, or early in the year 1856, the Stockbridge Iron Company ceased to manufacture iron altogether, and in 1860 sold its furnaces. From the time the Stockbridge Iron Company ceased to make iron, no claim to take ore was made under the reservation in the deed, till 1864. Such claim was then asserted in a letter of the treasurer of said company to the Hudson Iron Company, but was at once and positively denied by the latter company. In 1865 the Stockbridge Iron Company took from the premises a trifling quantity of ore. But none of any consequence was taken, and there was no attempt to practically avail itself of the pretended right asserted in the above mentioned letter of its treasurer, of 1864, prior to 1867."

The answer finally alleged, " upon the said deed and reservation, and upon the facts hereinbefore set forth,"

" 1. That under the said reservation there was reserved to the Stockbridge Iron Company for the sole use of said company in its furnaces at Stockbridge, and for no other use or purpose whatever, the right to mine and take so much ore on and from the premises as should be actually required for and used in said furnaces, not exceeding seventy-five hundred tons annually ; and that, when the Stockbridge Iron Company stopped business and sold out its furnaces, all rights under said reservation ceased and were extinguished.

" 2. That, the clear intent and purpose of all parties to said deed and reservation being to reserve a right to take ore for the exclusive use of the Stockbridge Iron Company in its own furnaces at Stockbridge and not otherwise, a court of equity will not lend its aid to defeat such intent and purpose, but will leave the plaintiffs to their remedy at law.

" 3. That, the Stockbridge Iron Company having for a period of more than fifteen years neither practically exercised nor claimed any rights under said reservation, and having during that period

always recognized the rights of the parties under said reserva-tion to be the same as they were originally intended to be, are now estopped to deny that these rights are different or otherwise, have been guilty of gross laches, and have lost all claim to equi table relief by virtue of their pretended claim, if any they ever had.

"4. That, upon any construction of said reservation, the right of the Hudson Iron Company in the premises and to the ore therein is paramount, and any right of the Stockbridge Iron Company, or any party claiming through or under it, must be exercised in subordination thereto; that the said reservation imposes no limit or restriction upon the extent of the mining operations of the Hudson Iron Company, nor upon the quantity of ore it may mine; that it confers no right of interfering with, or in any way embarrassing the mining operations of the Hudson Iron Company, and no right to use its mining facilities; and that, on the contrary, any mining operations of the Stockbridge Iron Company, or of any party claiming under it, must be so conducted as to in no way impede or disturb the existing works and operations of the Hudson Iron Company, and without its consent cannot be carried on by means of the mining facilities prepared for the sole use of the Hudson Iron Company, and at its sole expense."

The Stockbridge Iron Company filed a general replication on April 5, 1869.

THE SECOND SUIT was a cross bill filed by the Hudson Iron Company March 1, 1869, in which, after making the same allegations of fact as were contained in the answer to the original bill and are above quoted, it was further alleged that, by the terms of the deed and the reservation therein, the Stockbridge Iron Company was entitled to mine or take ore from the premises to be used only in its own furnaces at Stockbridge; and that, if by said terms it was legally entitled to transfer to purchasers or assigns any right to mine and take ore, or was legally entitled to mine or take ore for sale or to be used in any other manner than in its own furnaces at Stockbridge, "the language of said reservation was inserted in said deed by the mutual mistake of all par-

ties thereto, and defeats the intention of all said parties." The prayer was, for a decree dismissing the original bill filed by the Stockbridge Iron Company; for an injunction; for a reformation of the deed so as to conform to the true intent of the parties; and for general relief.

The Stockbridge Iron Company, in its answer, among other things denied that pending the negotiations it proposed to reserve to itself only the right to mine and take sufficient ore for the use of its said furnaces; or that it represented or in any manner suggested to the Hudson Iron Company that for the reasons stated in the cross bill, or for any other reason, iron could not profitably be made at Stockbridge, or that the Stockbridge Iron Company would use the ore under its reserved right but for a few years at most; or that the Hudson Iron Company received the deed with the understanding that the ore reserved therein was to be used by the Stockbridge Iron Company only in its furnaces at Stockbridge; or that the Stockbridge Iron Company, or its directors, or the Hudson Iron Company, or its trustees, ever understood or intended that the right to mine, reserved in the deed, was restricted to the supply of the furnaces of the Stockbridge Iron Company, as in said bill alleged; or that the deed to the Hudson Iron Company and the reservation therein were supposed or designed by any of the parties to effect such a restriction; and alleged that on the contrary " it was the design and intent of these defendants and of the plaintiffs, that the right in said deed reserved should be of a vendible, alienable, transmissible right, to be exercised and enjoyed at all places and under all circumstances which the interests of these defendants or their grantees or assigns might make desirable." It also denied that the extent of the right to mine, reserved in the deed, was in any manner graduated or fixed by or in reference to the quantity of ore then being used by the Stockbridge Iron Company at its furnaces; alleged that without inspection of the deed the defendants could not state by whom it was drawn, but denied the allegations of the bill as to any objections to the deed made by the agent of the Hudson Iron Company, or that it was finally received by him by reason of the alleged representations of the parties representing the

Stockbridge Iron Company, or that any such representations were made; admitted that the deed was delivered on or about August 28, 1849, but alleged that it was executed and placed in the hands of the Hudson Iron Company for examination, about ten days before it was delivered; and further denied " that the language of the reservation in said deed contained was inserted in said deed by the mutual mistake of all or any of the parties thereto, or that the same defeats the intention of the parties to said deed or any of them, or that the Hudson Iron Company is entitled to have said deed in any manner reformed, or that any facts exist which will in any manner, in law or equity, warrant or authorize any reformation thereof." Afterwards, by leave of court, the answer was amended by setting up the statute of frauds; and on March 25, 1871, subject to the objection of the Hudson Iron Company and the revision of the full court, by alleging such laches on the part of the Hudson Iron Company as to debar it from any reformation of the deed.

The Hudson Iron Company filed a general replication on June 29, 1869.

In January 1870, after the decision reported in 102 Mass. 45, the following issue for a jury was framed by the court in the second suit:

*First Issue.* " Did both parties intend to insert in the deed, which was delivered by the Stockbridge Iron Company to the Hudson Iron Company on the twenty-eighth day of August in the year eighteen hundred and forty-nine, a clause by which the right therein reserved to the Stockbridge Iron Company to mine and take ore from the premises should be limited and restricted to the use and supply of its furnaces in Stockbridge, and was in no event to exceed seven thousand five hundred tons annually, and was such clause omitted by the mistake of both the parties ? "

At the hearing at which this issue was framed, the Hudson Iron Company moved to include in the order the following additional issue; and the question whether the motion should be allowed was postponed for the determination of the judge at the jury trial.

*Second Issue.* " Was it the understanding, intent and agree‑ ment of both the Stockbridge Iron Company and the Hudson Iron Company, that, by the contract of purchase and sale be‑ tween the parties of the lands and ore-bed, the reservation to the Stockbridge Iron Company of the right to take seven thousand five hundred tons of ore annually at thirty-seven and a half cents per ton was limited and restricted to the use and supply of the Stockbridge Iron Company's furnaces at Stockbridge ; and was the deed delivered by the Stockbridge Iron Company and ac‑ cepted by the Hudson Iron Company in the belief and with the understanding that the deed gave legal effect to such understand‑ ing, intent and agreement ? "

The trial was had at May term 1871, before *Gray*, J., who made a report thereof, of which the following are the material parts :

" It was ruled by the presiding judge that the right reserved to the Stockbridge Iron Company in the deed was not limited to ore to be used in its own furnaces, and might be assigned by it to any other party. This ruling was excepted to by the Hudson Iron Company, and the question of its correctness is reported for the determination of the full court.

" The Stockbridge Iron Company objected to the submission of the second issue to the jury ; and contended that a finding of this issue in the affirmative, if the first issue . should be answered in the negative, would not warrant a reforming of the deed. But both issues were submitted to the jury, reserving the question of the effect of any finding thereon for the determination of the full court."

The report then set forth the evidence introduced by both par‑ ties ; and continued as follows :

" At the close of the whole evidence, the Stockbridge Iron Company contended that it appeared thereby that the parties had agreed to deliver and accept the deed in its present form, after it had been a subject of discussion between them which of the con‑ structions thereof, now contended for by the parties respectively, was the true one ; and that therefore a finding in favor of the Hudson Iron Company upon the second issue would not warrant

a decree in its favor, and there was nothing to be submitted to the jury upon that issue. But the judge refused so to rule as a matter of law ; and before the beginning of the closing argument for either party, he informed the counsel that he should submit to the jury the following

" *Third Issue.* ' Was the deed of the land and ore-bed deliv‧ ered by the Stockbridge Iron Company and accepted by the Hud‧ son Iron Company with the mutual intention and understanding that it should be and was in its present form, after the question had been raised and discussed between the parties whether the reservation to the Stockbridge Iron Company was limited, by the terms in which it was expressed in the deed, to ore to be used at its own furnaces ? '

" The Hudson Iron Company objected and excepted to the submission of the third issue to the jury, but did not offer, or ask time to procure,;any further evidence.

" The Hudson Iron Company contended that the burden of proof upon the issues framed on its motion was the same as in civil actions. But the jury were instructed that the ordinary rule of evidence in civil actions, that a fact must be proved by a preponderance of evidence, did not apply to such a case as this ; that the proof that both parties intended to have the precise agreement between them inserted in the deed, and omitted to do so by mistake, must be made beyond a reasonable doubt, and so as to overcome the strong presumption arising from their signa‑ tures and seals that the contrary was the fact ; and that in this case proof beyond a reasonable doubt was such a degree of proof as the jury would act upon in the most important affairs of life, and as would satisfy their judgments and consciences of the fact to be proved.

" The judge then proceeded to give instructions to the jury upon the law applicable to the first, second and third issues suc‑ cessively, to which no exception was taken. In these instructions the jury were told that, in order to find for the Hudson Iron Company on the first issue, they must be satisfied that a clause had been omitted which was intended to be inserted ; but that the second issue was broader, and covered a misunderstanding of the legal effect of the words used in the deed.

" No specific instruction was given or asked for as to the burden of proof on the third issue ; nor was the judge's attention called, nor any exception alleged, to the omission so to do ; and it was therefore not deemed by him to be open to exception, and he refused to allow such an exception first alleged after verdict.

" The jury answered the first issue in the negative, and the third in the affirmative, and failed to agree upon the second.

" The Hudson Iron Company, after the return and affirmance of the verdict, moved for a new trial, because of the rulings upon the construction of the reservation in the deed in its present form, upon the burden of proof, and the submission of the third issue to the jury at all, and because the finding of the jury upon this issue was against evidence and the weight of evidence ; but did not offer any new evidence upon this motion. The motion was overruled, and the questions of law presented by this report are reserved for the determination of the full court, who will make such order or decree in the cause as justice and equity may require. The question of laches in applying for a reforming of the deed has not been heard or tried either by a single justice or by a jury.".

In vacation after September term 1871, a master was appointed to find and report the facts as to any laches of the Hudson Iron Company in bringing the cross bill, and also as to any defence thereto by reason of any acts, conduct or claims of the Stockbridge Iron Company.

On December 26, 1871, the original suit of the Stockbridge Iron Company against the Hudson Iron Company was referred to the same master " to report any evidence either party may desire to submit as to the issues made by the bill and answer, and as to the understanding and agreement under which the deed and reservation in said bill set forth were made and accepted, and especially any evidence of the practical construction put by the parties upon said deed and reservation." At the time of this reference, the Hudson Iron Company moved that the second issue, submitted to and not decided by the jury upon the cross bill, should be submitted to a jury upon the original bill, and that, until a finding thereon, the original bill should not be heard by the court or

referred to a master ; but *Gray*, J., overruled the motion, reserving his ruling thereon, by request of the Hudson Iron Company, for the revision of the full court.

Upon the coming in of the two reports of the master, both cases were heard by *Gray*, J., and together with the facts and rulings theretofore made and reported upon the cross bill, were reserved for the decision of the full court.   The Hudson Iron Company objected to the reservation, upon the same ground (of the want of a finding upon the second issue) on which it had objected to the reference of the original suit to the master.   Upon this reservation, the cases were argued together at Boston in January 1872, before all the judges but *Colt*, J.

*S. Bartlett*, for the Stockbridge Iron Company.   I. *As to the original bill.*   The right and estate of the Stockbridge Iron Company is not derived from or under a license from the Hudson Iron Company, but is a clear exception out of the estate granted. The language of the clause is, "reserving;" but, by referring to prior language, relating to another exception, it is clear that the terms "reservation" and "exception" were used indiscriminately.   If the intent is clear, either word will receive the same construction.   Co. Lit. 143 *a*.   As to what is a reservation as distinguished from an exception, see Bainbridge on Mines (1st Am. ed.) 34, 73.

The rules of construction applicable are stated with great clearness, in the case of a will, in *Scarborough* v. *Doe*, 3 Ad. & El. 897, 962, and as applied to a deed would stand as follows : Whilst the intention of the parties ought to be our only guide to the interpretation of their deed, it must be their intention to be collected from the words of the instrument, sealed and delivered by them.   No surmise or conjecture of any object which any of the parties may be supposed to have had in view can be allowed to have any weight in the construction of a deed, unless such object can be collected from the plain language of the deed itself.

The thing excepted from the grant is " the right of mining for the use of the company."   The grantee seeks to found upon these words a construction, that not merely was the right, so to

speak, personal to the grantor corporation, but further, that the court must infer from them that this personal use was limited to a fixed locality, and that, when it should become (by fire, removal or sale) incapable of being enjoyed there, it was the purpose of the deed that the right should terminate. But such a construc tion of the simple words " for the use of the company" is un warranted by any rule of law. The mode of enjoyment is no-where referred to ; nor the limitation of that enjoyment, which is to be commensurate with the existence of the corporation. The words " heirs and assigns " are not necessary to a grant of fee to a corporation. Nor do the words, as applied to a corporation, im-port a personal use, even if they would do so when applied to an individual. A thing granted for the use of a trading or manu-facturing corporation is applied to such use, when by its sale or conversion into money it advances or produces the end or purpose of the creation of the corporation.

The Hudson Iron Company further asserts that, if the con-struction of the deed is adverse to its theory, then there was a mutual mistake as to the terms and effect of the exception or res-ervation contained in the deed ; and that, upon the proofs which it offered to show such mistake, it has a defence to the original bill, although it may fail to maintain the cross bill to correct the mistake. This view proceeds on the ground that it requires less distinct and cogent proof to resist a bill founded on an executed deed, than it does to maintain a bill to correct the alleged mistake in such a deed.

If the original bill were for the specific performance of a con-tract, the view would be a sound one ; since the doctrine in such a case is, that a mistake, even of one party only, will lead the court, not to declare that the plaintiff has no legal rights, but to refuse him equitable aid and leave him to his legal remedies. Fry Spec. Perf. §§ 474, 478. But this doctrine has no applica-tion to a bill founded on an executed deed or conveyance. *Vigers* v. *Pike*, 8 Cl. & Fin. 562, 645. It therefore remains to find if the Stockbridge Iron Company is seeking to enforce specific exe-cution of an executory contract ; and it is clear that the original bill proceeds upon the ground of title, not derived from the Hud-

son Iron Company, but held long before the purchase by that company of part of that title, and excepted out of the purchase. It does not seek to enforce any duty resting on the Hudscn Iron Company by reason of any contract on its part; for it made none.

There is a further answer to this attempted defence to the original bill. The Hudson Iron Company has filed a cross bill, which also sets it up; and has had issues framed and tried with a view to support it. Those issues, as framed, settle either that the defence is valid or invalid. If valid, then the defence to the original bill is effectual. If invalid, then the Hudson Iron Company cannot try the matter over again, under the guise that the suits are separate suits. The doctrine is clear that the bill and cross bill constitute one suit. Story Eq. Pl. § 399, and note. 2 Dan. Ch. Pract. (3d Am. ed.) 1647 *& seq. Slason* v. *Wright,* 14 Verm. 208.

As to the proposition at the close of the answer of the Hudson Iron Company to the original bill, that the facts therein alleged show that for more than fifteen years the Stockbridge Iron Company neither claimed nor exercised any rights under the reservation contained in its deed, and always recognized the rights of the parties to be " as they were originally intended to be; " even assuming that these allegations of fact are sustained by the proofs, yet they are inadmissible to give construction to a deed, the terms of which are so unambiguous, and much less to engraft on it a clause enlarging by parol the estate conveyed, in the manner in which the Hudson Iron Company seeks to enlarge it. The same proposition adds, that by reason of these alleged facts the Stockbridge Iron Company is estopped to deny that the rights of the Hudson Iron Company are as claimed, and has been guilty of fatal laches. But if the facts as proved do not warrant the court in changing the construction of the deed from its plain import, they cannot work an estoppel *in pais,* unless by reason that the Hudson Iron Company has changed its condition; and it is still more difficult to perceive how an estate which one corporation reserved and excepted by deed can be lost to it and conveyed to the other by laches.

II. *As to the cross bill.* It is, in the first place, anomalous in structure. It avers that, by the true construction of the deed, the rights claimed under the reservation were limited to the use of the Stockbridge Iron Company in its furnaces in Stockbridge, and were terminated by the sale of those furnaces ; and it then proceeds to allege that if the legal rights of the Stockbridge Iron Company under said reservation are as set forth in its bill, and if it, or any party claiming under it, is legally entitled to mine or to take ore, &c., " the language of said reservation was inserted in said deed by mutual mistake," and prays that the deed may be reformed. But if the legal construction of the reservation be as averred, the defence to any action founded on the deed at law or in equity is perfect ; and the Hudson Iron Company cannot invoke the court to reform a deed upon a contingency which has not happened, and which upon its own averment of its legal construction never will happen. *Edwards* v. *Edwards*, Jacob, 335. It is to be observed that this is not what is known as a bill with a double aspect. Such a bill may be maintained when the title to relief upon either of the propositions on which it is framed will be precisely the same. Here the relief sought is, that the original bill may be dismissed, and also that the deed may be reformed. Story Eq. Pl. § 254.

The cross bill was also brought after such a lapse of time, and under such circumstances of acquiescence, as to preclude the Hudson Iron Company from a right to ask the intervention of the court, by reason of its laches. The court " will not give relief unless in cases where the party seeking it comes as promptly as the nature of the case will permit." *Eads* v. *Williams*, 4 De Gex, Macn. & Gord. 674, 691. See also *Heaply* v. *Hill*, 2 Sim. & Stu. 29 ; *Watson* v. *Reid*, 1 Russ. & Myl. 236 ; *Parkin* v. *Thorold,* 16 Beav. 59, 73 ; *Clegg* v. *Edmondson*, 8 De Gex, Macn. & Gord. 787, 810 ; *Lehmann* v. *McArthur*, Law Rep. 3 Ch. 496, 504 ; *Tash* v. *Adams*, 10 Cush. 252 ; *Fuller* v. *Melrose*, 1 Allen, 166 ; *Fuller* v. *Hovey*, 2 Allen, 324 ; *Peabody* v. *Flint*, 6 Allen 52 ; *Plymouth* v. *Russell Mills*, 7 Allen, 438 ; *Merchants' Bank* v. *Stevenson*, Ib. 489 ; *Evans* v. *Bacon*, 99 Mass. 213.

The statute of frauds furnishes °a further defence to the cross bill; which seeks, by oral evidence, to add to the deed terms "which would so modify the instrument as to make it operate to convey an interest or secure a right which can only be conveyed or secured by an instrument in writing, and for which no writing has ever existed." *Glass* v. *Hulbert*, 102 Mass. 24, 31. Even if the right in question had been, instead of a reservation by the Stockbridge Iron Company, the subject of a grant by the Hudson Iron Company as owner of the land, to the Stockbridge Iron Company, as a mining privilege or license to work mines, it must, to be valid, have been by deed, such beneficial privilege in land being within the statute of frauds. Bainbridge on Mines (1st Am. ed.) 112, 118. *Huff* v. *McCauley*, 53 Penn. State, 206.

There also remains the question whether the findings upon the issues submitted to the jury dispose of the cross bill.

The first issue is confined to the intent of the parties at the time the deed was delivered, irrespective of their previous intent when the oral contract which resulted in the deed was made. The case finds that the draft or deed was made and dated July 20, but not delivered until August 28, 1849, and the jury have found that at the time of the delivery it was not the intent of the parties that the clause should be inserted which the cross bill now seeks to have inserted by a decree of court.

The second issue couples two distinct questions: first, whether the intent of the parties, at the time "of the contract of purchase and sale between the parties of the lands and ore-beds," was as stated; and second, whether at the time of the delivery of the deed, more than a month afterwards, it was their understanding and belief that it "gave legal effect to the understanding, intent and agreement" as it existed at the time of the contract of purchase and sale. The jury might well have doubted whether there was, at the time "of the contract of purchase and sale," any such intent as is set out in the first proposition, and yet have had no doubt that the parties did not, when the deed came to be delivered, understand or intend that it should give legal effect to any such intent, if it existed; since they had found, on the first issue, that the parties did not design that any clause giving effect to

BERKSHIRE.

such intent should be inserted in the deed. This issue was framed by request of the Hudson Iron Company. If the propositions had been disjunctive, an answer to each might have been returned as above stated; but as the Hudson Iron Company chose to connect them, the jury, having doubt as to the first, returned the answer to the whole, that they could not agree. If it were plain that their doubt was as to both propositions, it is to be reasonably inferred that the court would hardly, upon their own view of the evidence, find such clearness and strength as to rest upon it the alteration of a written instrument.

The third issue, as found, settles that, before the delivery of the deed, the question had been raised and discussed, whether the reservation was limited, by the terms in which it was expressed, to ore to be used at the Stockbridge Iron Company's own furnaces; and that after this discussion the deed was accepted and delivered " with the mutual intention and understanding that it should be and was in the present form."

Therefore, as the first issue finds that it was not the intent of the parties that a clause should be inserted in the deed limiting and restricting the right to ore to be used in the Stockbridge Iron Company's furnaces, and the third issue finds that, after the discussion of the very question, the parties agreed that the deed should stand in its present form, the attempt now to insert the restriction must fail. If the findings are to stand (and they were satisfactory to the presiding judge, who refused a new trial) they are conclusive, and do not permit a reëxamination of the evidence by the full court. *Franklin* v. *Greene*, 2 Allen, 519. If the second proposition in the second issue could be proved, that the deed was " delivered by the Stockbridge Iron Company and accepted by the Hudson Iron Company, in the belief and with the understanding that it gave legal effect " to an understanding, existing at the time of delivery, that the reservation was restricted as alleged in the cross bill; still the fact found :y the third issue, that, " after the question had been raised and discussed, whether the reservation was limited, by the terms in which it was expressed, to ore to be used in the furnaces of the Stockbridge Iron Company," the deed " was delivered by the

Stockbridge Iron Company, and accepted by the Hudson Iron Company, with the mutual intention and understanding that it should be and was in its present form," must preclude the Hudson Iron Company from again raising the question. Kerr on Fraud & Mistake (1st Am. ed.) 428. *Eaton* v. *Bennett*, 34 Beav. 196. *Dodge* v. *Essex Insurance Co.* 12 Gray, 66, 72. *Andrew* v. *Spurr*, 8 Allen, 412, 416. *Farr* v. *Sheriffe*, 4 Hare, 512, 523. *McElderry* v. *Shipley*, 2 Maryl. 25, 35. *Norris* v. *Laberee*, 58 Maine, 260.

If it shall be the judgment of the court, that, as to the defences set up by the answer to the original bill, and as to the reformation sought by the cross bill, the Hudson Iron Company must fail, there remains the question whether the right reserved to the Stockbridge Iron Company is predominant over those of the Hudson Iron Company, or whether both stand on equal footing. The right claimed by the Stockbridge Iron Company is to sink shafts and mine the prescribed quantity of ore annually, in any part or parts of the premises, as may be most convenient and economical, without regard to the future extension of the operations of the Hudson Iron Company, but without waste or unskilfulness. This claim is in no way a derogation from the grant made by the deed. That grant excepts the right in question, limits the quantity and extent of its enjoyment, and provides for compensation for such enjoyment. It will not be questioned that this reservation is entitled to as favorable a construction as if the Hudson Iron Company had been owner of the premises, and made to the Stockbridge Iron Company a grant in its terms. Such a grant, making no restriction as to the parts of the premises in which it is to be enjoyed, would leave the grantee full power to select such as would be most convenient and economical for its enjoyment. That by virtue of the reservation the Hudson Iron Company's rights of mining are subordinate to those of the Stockbridge Iron Company is shown by assuming a possible future state of facts, that the ore-beds should approach exhaustion. Could the Hudson Iron Company proceed with its operations, and thus defeat its grant?

*B. R. Curtis & B. F. Thomas,* (*T. P. Pingree, J. M. Barker & R. Olney,* with them,) for the Hudson Iron Company. I. *As to the case upon the original bill.* The clause in question, in the deed, was a reservation and not an exception. It newly creates a right to take from the land of the grantees ore of the grantees, paying therefor a stipulated price. The granting part of the deed conveyed not only all the land, but all the ore-beds contained therein. An exception of part of the ore would have been in direct conflict with the grant ; which, by express words, had conveyed the whole. But the principles of the common law, which forbid an exception repugnant to a grant, allow a reservation to be made of some new right or interest issuing out of the thing granted.

The right reserved was not of any estate or property in the ore *in situ.* It was simply a license to mine for ore, and remove what should be thus gained. *Thomas* v. *Sorrell,* Vaugh. 330, 351. *Doe* v. *Wood,* 2 B. & Ald. 724. The grantor, by force of the reservation, has no exclusive or superior right. The license does not derogate from the grant anything more than its terms necessarily import, or restrain the grantee of the land and the ore from making such use of his property as the owner in fee may lawfully make. The reservation is not to be first served, to the exclusion or restraint of the grant in fee. The owner of such an incorporeal right not only has no property in the minerals, but his incorporeal right to search for and obtain them does not affect the right of the owner to mine *ad libitum. Lord Mountjoy's case,* Godbolt, 17 ; *S. C.* 4 Leon. 147 ; Moore, 174 ; 1 Anderson, 307 ; Co. Lit. 165 *a. Chetham* v. *Williamson,* 4 East, 469. *Marble Co.* v. *Ripley,* 10 Wallace, 339. *Grubb* v. *Bayard,* 2 Wallace, Jr. 81. *Johnstown Iron Co.* v. *Cambria Iron Co.* 32 Penn. State, 241. *Funk* v. *Haldeman,* 53 Penn. State, 229. *Sprague* v. *Snow,* 4 Pick. 54. Such an incorporeal right, though assignable, is not divisible or apportionable, and as soon as it is divided it is extinguished. *Caldwell* v. *Fulton,* 31 Penn. State, 475, 485. *Van Rensselaer* v. *Radcliff,* 10 Wend. 639. *Brooks* v. *Byam,* 2 Story, 525.

The words " for the use of the Stockbridge Iron Company," in the clause, were intended to limit the quantity of ore which might

be taken under the reservation, by declaring the purpose for which it was to be taken. Thus construed, they have an appropriate meaning; otherwise they are useless. [GRAY, J. May they not have been inserted by analogy to the words "to his use and behoof forever" in the ordinary *habendum* clause of deeds?] The ordinary *habendum* clause is inserted to satisfy the statute of uses; but the statute of uses has no application to this reservation. Words are to be construed most strongly against the grantor. *Adams* v. *Frothingham*, 3 Mass. 352, 361. *Worthington* v. *Hylyer*, 4 Mass. 196, 205. 1 Shep. Touchst. 101. Shaw, C. J., in *Johnson* v. *Jordan*, 2 Met. 234, 240. And it is a settled rule that all the material surrounding circumstances, known to the parties, are to be taken into consideration by the court in construing doubtful expressions in a deed. Among these circumstances in this case, it is to be noted that the Stockbridge Iron Company was a corporation whose only legal capacity at the time was to manufacture iron in the town of Stockbridge. It was not a mining company, and had no power to mine and sell ore, but only to obtain it, in the language of the deed, "for its own use." St. 1841, c. 19. St. 1864, c. 291. *Whittenton Mills* v. *Upton*, 10 Gray, 582, 595. And it is further to be noted that to use ore to manufacture iron in the town of Stockbridge charcoal was necessary; and it was known to the parties that its supply was becoming more and more restricted and expensive, and that it was not reasonably to be anticipated that this manufacture could long be prosecuted by this company under its act of incorporation. Under these circumstances, a right to take ore simply as the property of the taker, and a right to take it for its own use in its furnaces, were very different things. The first would be of indefinite duration; the last might reasonably be expected to find, as it did, an early termination.

This interpretation is agreeable to the nature of the right reserved. If the words of the reservation had been "for the use of the Stockbridge Iron Company, in its furnaces in the town of Stockbridge," it would have been in entire accordance with similar grants and reservations under the common law; and no one would contend that ore could be taken for any other use, any

more than, if wood is reserved for a particular house, or water for a particular mill, the thing reserved could be taken for any other than the designated use. But the special use may be designated by any words which, when applied to their subject matter, fairly designate it. And if the Stockbridge Iron Company had no legal capacity to use the ore except in its furnaces in Stockbridge, the omission of the words "in its furnaces in Stockbridge" is an omission to express what the law expresses, for the corporation had legal capacity to use the ore in no other way.

There is another view, drawn from the reason of that rule of the common law which holds such a right to be indivisible, because to allow it to be divided might increase the capacity of its owners to take the *profit a prendre* to which it relates; or as Lord Coke expresses it, to allow the right to be divided might work a surcharge and prejudice to the tenant of the land. Co. Lit. 165. *Brooks* v. *Byam*, 2 Story, 525, 546. When the reservation was made, the Stockbridge Iron Company had no legal capacity to mine for and use ore, save for the supply of its furnaces in Stockbridge. St. 1841, *c.* 19. But by the St. of 1864, *c.* 291, it was authorized to mine ore for manufacture or sale, and to manufacture on the banks of the Hudson River. So far as respects this reservation, the legal capacity of the person to use it. was thus materially changed and enlarged; and this change and enlargement not only may increase the capacity of the reservee, and so tend to a surcharge and prejudice of the tenant of the land, but that was its avowed object. And the amendment of the charter both affords decisive evidence of the original mited capacity of the corporation, if any such were needed, and also conclusively manifests an intention indefinitely to enlarge it. The capacity of the corporation to be the owner of the reservation was thereby destroyed. The corporation became as incapable of holding it, as two or more natural persons would be incapable of holding it in equal moieties.

The scope of the original bill is to obtain a declaration of the rights and duties of the parties, and a decree specifically to enforce them. A court of equity, except in some special cases of trustees applying for directions, never makes a declaration of

rights save as preliminary to such a decree. Unless the court, upon this bill, can make a decree for the specific enforcement of all the respective rights of the parties, it will make no decree except to dismiss the bill and leave the parties to their action at law. And in this connection it is pertinent to observe, that the rights and duties of each party depend entirely upon a strictly legal title created by the reservation. The question whether the bill can be maintained depends, therefore, on the further question whether a court of equity can undertake specifically to enforce the respective rights and duties of these parties to mine for ore in the land. This can only be done by retaining the suit in court indefinitely, and from year to year making the necessary inquiries and passing the necessary orders. Taking the title of the Stock-bridge Iron Company to be only an incorporeal right to mine for not exceeding seven thousand five hundred tons annually, while the owner of the fee has also the right to mine *ad libitum*, it is impossible to regulate the concurrent exercise of these rights by a prospective decree. *Gervais* v. *Edwards*, 2 Drury & Warren, 80. *Hills* v. *Croll*, 2 Phillips, 60. *Booth* v. *Pollard*, 4 Y. & Col. Exch. 61. *Pollard* v. *Clayton*, 1 Kay & Johns. 462. *Blackett* v. *Bates*, Law Rep. 1 Ch. 117. *Marble Co.* v. *Ripley*, 10 Wallace, 339. *Port Clinton Railroad Co.* v. *Cleveland & Toledo Railroad Co.* 13 Ohio State, 544.

It has already been submitted that the reservation in the deed poll takes effect by reason of the intent of the grantor declared in the reservation, and the assent thereto of the grantee conclusively manifested by its acceptance of the deed and entry under it. In the language of Shaw, C. J., in *Newell* v. *Hill*, 2 Met. 180, 181, "a deed poll, when accepted by the grantee, becomes the mutual act of the parties, and a stipulation on the part of the grantee, though it cannot be declared on as his deed, yet by force of his acceptance is a valid contract on his part, by which a right may be reserved or granted, or upon which a suit may be maintained." It is of no importance whether the right in question is created by some formal stipulation of the grantee to do something, or by his assent that the grantor shall take something. In each case, it is the assent of the grantee, by force of which there is a valid con-

tract, by which a right may be reserved or granted, or on which a suit may be maintained. And this bill is founded on the assent of the grantee that the grantor may take something from the land granted, which assent made a valid contract on his part to that effect. It is settled law that a court of equity will not compel one of the contracting parties to do or suffer anything not in-cluded in the contract as he actually understood it when he as-sented to it. *Western Railroad Co.* v. *Babcock*, 6 Met. 346. *Wycombe Railway Co.* v. *Donnington Hospital*, Law Rep. 1 Ch. 268. *Malins* v. *Freeman*, 2 Keen, 25, 34. *Ball* v. *Storie*, 1 Sim. & Stu. 210. Snell Eq. 441, 442. Whatever doubt there may be respecting the question of mutual mistake raised by the cross bill to reform the deed, the proof is complete that, when the Hudson Iron Company accepted the deed, the reservation was understood by the grantees to be limited to a use by the Stockbridge Iron Company of the ore in its furnaces at Stockbridge. To maintain this bill, the purpose of which is to establish a right to mine for ore to be used in furnaces elsewhere, would be a violent departure from the understanding of the reservation by the Hudson Iron Company when it assented to the reservation. In such a case, the plaintiff should be left to its remedy at law.

II. *As to the case upon the cross bill.* If the defence of laches might ever have been made, the Stockbridge Iron Company has waived and lost the right to set it up, by omitting to do so till the time of filing the amended answer. That answer was al-lowed to be filed against the objection of the Hudson Iron Company and without prejudice to its rights; the matter being reserved for the full court. And the amendment should now be disallowed, and the defence of laches excluded from the case. 1 Dan. Ch. Pract. (3d Am. ed.) 780, 782. *Western Reserve Bank* v. *Stryker*, Clarke, 380. *Campion* v. *Kille*, 1 McCarter, 229, 232. *Percival* v. *Caney*, 14 Jur. 473. 1 Dan. Ch. Pract. (5th ed.) 681. Story Eq. Pl. § 760. *McDougal* v. *Purrier*, 4 Russ. 486. *Tarbell* v. *Bowman*, 103 Mass. 341. *Merchants' Bank* v. *Stevenson*, 7 Allen, 489. *Hancock* v. *Carlton*, 6 Gray, 39.

If the defence were now open, still upon the facts in proof the plaintiffs have not been guilty of laches. Mere assertions of a

claim, unaccompanied by any act to give it effect, have no tendency to put a party in default in not resorting to legal proceedings. See *Clegg* v. *Edmondson*, 8 De Gex, Macn. & Gord. 787; *Lehmann* v. *McArthur*, Law Rep. 3 Ch. 496; Fry Spec. Perf. § 744. And it is well settled that a party is not bound to rush into litigation, if there is a reasonable chance of securing his rights without it; and that the pendency of negotiations for the settlement of a controversy will excuse any apparent delay in the resort to legal proceedings. *Southcomb* v. *Bishop of Exeter*, 6 Hare, 213. *Lehmann* v. *McArthur*, Law Rep. 3 Ch. 496. *Mc-Murray* v. *Spicer*, Law Rep. 5 Eq. 527, 537.

The case at bar is analogous to that class of cases in which it has been held that the defence of laches has no application, the plaintiffs being in possession under an executed contract, and enjoying all the fruits of that contract, relying on their equitable title, and the object of the suit being simply to have the legal title perfected. See *Crofton* v. *Ormsby*, 2 Sch. & Lef. 583, 604; *Clarke* v. *Moore*, 1 Jones & Lat. 723; *Sharp* v. *Milligan*, 22 Beav. 606; *Waters* v. *Travis*, 9 Johns. 450.

If the Hudson Iron Company has a plain equity for the reformation of this deed, it ought not to be deprived of it by mere lapse of time, unless its inaction during such time has deceived somebody, and thereby led somebody to change position injuriously. *Ex parte Williams*, Law Rep. 10 Eq. 57, 59. See *Tarbell* v. *Bowman*, 103 Mass. 341; *Welles* v. *Yates*, 44 N. Y. 525, 531; *Bidwell* v. *Astor Insurance Co.* 16 N. Y. 263.

The case of the cross bill, on the report of the presiding judge, is still open upon the second issue. The whole court had ordered an issue of fact to be sent to the jury. Upon the application of the Hudson Iron Company for a second issue, the question was referred to the justice who should hold the jury term, and he granted the application, and his order granting it has not been revoked. It is the only issue which the Hudson Iron Company then regarded, or now regards, as material on the cross bill. There has been no verdict upon it, and it stands as if it had never been tried. As to it, there is and can be nothing for the action of the whole court, save the question whether the order allowing it shall

be revoked. And the only ground upon which this court can re-
voke that order is, that the finding of the jury upon the first and
third issues renders the second immaterial. But the reverse of
this is true. With a verdict for the Hudson Iron Company upon
the second issue, the first and the third are immaterial.

The second issue covers the whole ground; the common intent
and understanding of the contract, and the common understand-
ing and construction of the deed. To inquire, as called for in
the first issue, whether the parties intended to insert a clause
(other than that in the deed) to limit the reservation, and omit-
ted to do so by mistake, is of no moment. Of course they did
not, if they delivered and accepted the deed in the belief and
with the understanding that, as written, it accomplished their
purpose and gave legal effect to their common understanding,
intent and agreement. Nor is the third issue, whether the ques-
tion as to the effect of the reservation in the deed, as written,
was mooted and discussed between the parties, of moment, if the
result of the discussion was that the deed was delivered and
accepted in the belief and with the understanding of both parties
that it was so framed as to give legal effect to the intent and
understanding of both parties in the contract of purchase and
sale. The finding in the third issue has no tendency to show
that after the discussion there was any difference of opinion as to
the legal construction and effect of the deed as written. The
presumption from delivery and acceptance after discussion is, that
the deed was deemed right as it stood. The third issue suggests
no discussion as to the terms of the sale, but is confined to the
terms by which the reservation is expressed in the deed.

The presiding justice erred in sending the third issue to the
jury, and his order sending it should be reversed. No request
was made by either party that such an issue should be framed;
and no intimation of such an issue was given till the evidence on
both sides was closed. It does not obviate the objection, to say
that further time was not asked to put in further evidence. The
case had been prepared and the evidence taken without any view
to such an issue. There is no resemblance between the trial of
special issues in equity and the trial of cases at common law. In

the latter, the parties are expected to be prepared to try the whole case. Questions put by the presiding judge to the jury are upon points within the scope and range of the trial. But the issue in equity is carefully framed by the court, and the parties are strictly limited to evidence touching it. The general merits of the case are not open to evidence or argument; and it would be a sufficient reason to exclude and forbid either, that it does not bear upon the precise point which the issue involves. The only question on this point would seem to be, whether the third issue was so connected with and dependent upon the second, that the parties should have been prepared for it.

As to the instructions to the jury upon the burden of proof, the court, so far as the issues were concerned, had treated the original bill and cross bill as one proceeding, and declined to grant the Hudson Iron Company issues on the original bill, because they were allowed on the cross bill; 102 Mass. 45, 49; and we are therefore, to find a rule applicable to the defence set up in the original bill and the prayer for reformation in the cross bill. In the original bill, the Stockbridge Iron Company invokes the aid of equity to give effect to the reservation in the deed. The Hudson Iron Company answers that to do so would be against equity, for by the original understanding and agreement of the parties the right reserved was a qualified right, and no longer exists. There is no rule of equity which requires such a defence to be established beyond a reasonable doubt. The rule should be, on the contrary, that unless the plaintiff shows, upon the whole evidence, that he has an equitable as well as legal claim, a court of equity will not interfere. Weight may be given to the presumption arising from the written instrument, but the burden is not shifted. If it be said that a more stringent rule obtains in the reformation of contracts; then, as to the equitable defence to the original bill, the Hudson Iron Company should have an issue under the less stringent rule.

But the instructions, as applicable to the cross bill, were erroneous. The rule laid down as to the burden of proof, and the explanation of the rule, are applicable in criminal cases only, and from considerations which do not obtain in civil cases. See Com-

*monwealth* v. *Webster*, 5 Cush. 295, 320. For, though the facts to be proved in civil cases may be the same as in criminal, (as in a suit upon a note where the defence is that it has been forged, or in a libel for divorce on the ground of adultery,) the rules as to the burden or amount of proof are never imported from the one to the other. Yet the matters thus noticed are of far greater moment than any question of property merely. The rule, as laid down, is not reasonable. It is impossible, by any abstract rule, to measure the strength of the presumption arising from the signatures and seals of the parties, or from the acceptance of a deed, and then say how much evidence is necessary to overcome it. It is a question of fact, depending upon the relations of parties, the confidence reposed by each in the other, and all the circumstances of the transaction. The rule cannot be extended to civil causes, without obstructing the course of justice. No explanation, comment or gloss can make it intelligible to the jury. It is only when the phrase " beyond reasonable doubt " has been neutralized by the commentary, that it ceases to confuse and mislead; and this seldom or never occurs. Nothing was required on these issues but such evidence as satisfied the judgments of the jury. This may not be mere preponderance, but such preponderance as convinces the understanding. The instructions were applicable only to the first issue, and were not appropriate to the second.

The question has not been settled; the remarks of the chief justice in the 102 Mass. 45, 49, were *obiter dicta ;* no such point was raised in the cause or involved in its determination. The question before the court then was, whether issues should be granted, not how they should be tried.

WELLS, J. The verdict upon the first issue defeats the position of the plaintiff in the cross bill, so far as it rests upon the ground of an omission to insert in the deed any clause or provision agreed upon or intended to be inserted. The only question now before us, relating to that issue, is of the correctness of the instruction to the jury, " that the ordinary rule of evidence in civil actions, that a fact must be proved by a preponderance of evidence, did not apply to such a case as this ; that the proof that both parties intended to have the precise agreement between

them inserted in the deed, and omitted to do so by mistake, must be made beyond a reasonable doubt, and so as to overcome the strong presumption arising from their signatures and seals that the contrary was the fact ; and that in this case proof beyond a reasonable doubt was such a degree of proof as the jury would act upon in the most important affairs of life,·and as would satisfy their judgments and consciences of the fact to be proved."

This is in precise accordance with the rule as stated in the opinion of the court upon the former hearing of this case. 102 Mass. 45. That statement was not *obiter dictum*, as it is now contended on the part of the plaintiff. It was involved in the question whether to submit the issue to a jury, which was a question of judicial discretion. In order to determine it, the court were necessarily led to consider whether, and in what mode, the verdict of a jury could be made an equivalent for that completeness of proof which is required in all such cases as the foundation of judicial interference in equity. It has always been held in courts of chancery, that, in order to reform a written contract, and make it conform to a variant oral agreement, the proofs must be full, clear, and decisive ; free from doubt or uncertainty ; such as entirely to satisfy the conscience of the chancellor. This well established and salutary principle constitutes the difficulty of submitting such cases to a jury ; the office of whose verdict is to inform and satisfy the conscience of the court. A verdict rendered upon mere preponderance of evidence would not do this. In order that a verdict, in cases of this nature, may answer its legitimate purpose, we know no better or safer rule than that laid down at the trial.

At the trial, upon motion of the plaintiff in the cross bill, and against objection by the defendant, a second issue was allowed to be submitted to the jury. This issue presented in substance the claim of the plaintiff that, at the time of the delivery of the deed, both parties alike understood that the legal effect of its terms, as written, was to restrict the mining rights of the grantor to the supply of its furnaces at Stockbridge ; and that such was in fact the real agreement upon which the deed was given and accepted.

The jury failed to agree upon this issue ; and one question to be decided is, whether the court can proceed to a decree until a verdict has been reached upon this issue also. The question is twofold : 1st. Whether the fact involved in the issue is essential; 2d. Whether the court may determine the fact without a jury, upon the evidence as reported, together with that taken and reported by a special master appointed for the purpose upon the original bill.

The question may be somewhat modified by the verdict of the jury upon the third issue, namely, " Was the deed of the land and ore-bed delivered by the Stockbridge Iron Company and accepted by the Hudson Iron Company, with the mutual intention and understanding that it should be and was in its present form, after the question had been raised and discussed between the parties whether the reservation to the Stockbridge Iron Company was limited, by the terms in which it was expressed in the deed, to ore to be used at its own furnaces ? "

This issue was suggested by the course of the trial, and was submitted by the presiding justice in order to determine a question of fact, upon the proof of which the defendant insisted that the second issue became immaterial. We are unable to see that the plaintiff could have been prejudiced in any way by the direction of the court, before the closing arguments, that this additional question should be passed upon by the jury. It was incidental to, and in no respect diverse from the other issues tried. It was in a measure involved in the others. It grew out of, and would be determined upon the same evidence. The plaintiff did not, at the time, suggest that other or different evidence would be applicable, or that it existed. The second issue had been ordered upon the plaintiff's motion, after the parties had come together, with their witnesses and proofs, for the trial of the first, and against the objection of the defendant. Upon that issue a question of law was raised, which, in the judgment of the presiding justice, rendered the third issue proper and expedient for its determination. The objection of the defendant does not appear to us to be well founded or reasonable. The whole matter was one of judicial discretion ; and although, as such, it is open

to revision in equity, we find no ground on which the propriety of the exercise of that discretion in this particular can be fairly impeached.

If the second issue was immaterial, or has become so by reason of the findings of the jury upon the other two; or if, for any reason, it ought not to have been submitted to the jury, it is competent for the court to disregard it in the further disposition of the case. It becomes necessary, therefore, to examine the precise position of the case, and the nature of the questions remaining undetermined.

As it now stands, after verdict upon the first and third issues, it is established that the deed is, in form and language, precisely what the parties intended it should be ; that the plaintiff accepted it with full knowledge of the form in which its provisions were expressed, and that too after discussion of the very question whether it restricted the grantor in the manner in which it is now claimed that it should do. But it is contended that both parties then understood alike that the deed, in its present form, did so restrict the defendant; and that there was a previous oral agreement between them for the sale of the land, by the provisions of which the defendant was to be so restricted. These questions are presented by the second issue.

It will be seen that there is a question thus presented by both branches of the issue, when taken together, which is not merely of a mutual mistake of law as to the construction and effect of the deed ; but whether, by reason of such mutual mistake, the deed, contrary to the real intention of both parties, failed to be a full and complete execution of the previous contract of purchase and sale. Such a mistake, if there are no legal objections to the enforcement of the oral agreement, will furnish sufficient ground for the interference of a court of equity to require a rectification of the deed. *Canedy* v. *Marcy*, 13 Gray, 373. *Hunt* v. *Rousmaniere*, 1 Pet. 1, 13. 2 Lead. Cas. in Eq., notes to *Woollam* v. *Hearn*, 680. Story Eq. § 115. Kerr on Fraud & Mistake (1st Am. ed.) 418–421.

The foregoing proposition excludes the case of an instrument adopted by the parties as a modification of or substitute for a pre-

vious agreement, or where it was not intended fully or exactly to conform to the agreement. It also excludes the case of a deed given and accepted as the result of previous negotiations, where the precise terms of the sale and proposed conveyance had not been settled and agreed upon previously, or otherwise than by the written instrument itself.

Upon the ground of mistake, it embraces only the case of a completed oral or other precedent agreement; a deed intended to conform to it and carry it into effect according to its precise provisions; delivery and acceptance of the deed with the mutual supposition that it did so conform to the agreement. This ground of relief assumes that the deed is in form as it was intended and understood to be when accepted; the mistake consisting in the erroneous supposition that in fact and legal effect it corresponded with the oral agreement.

The third issue is not inconsistent with this position of the plaintiff; and the verdict upon it does not render the question presented by the second issue immaterial.

The objection that the second issue couples together two distinct questions is not tenable. The issue, in its legal aspect, is single; though it depends upon two propositions of fact, namely, a previously subsisting oral agreement, and a deed, intended to carry the agreement into effect, but, by mistake and misunderstanding of the legal construction of its terms, failing to do so.

Upon examining the plaintiff's bill, we do not find any distinct or sufficient allegation of such an agreement, independently of the deed itself. Without it, the fact that both parties understood that the legal construction and operation of the deed would be otherwise than what it is now held to be, would not warrant its rectification to make it conform to that supposed meaning. Mistake of law alone is not sufficient. There must be some agreement of the parties, distinct from the written instrument, to which the instrument may be made to conform. It may be otherwise when the alleged error is not in respect of the subject matter of the contract, but in some incidental clause of restriction or condition. But in the present case it affects the subject matter of the grant.

Nevertheless, as the defect of pleading has not been taken advantage of by demurrer, nor presented as a special objection to the issues, and the trial and argument have proceeded as if there were sufficient allegations in the bill in this particular, we are disposed to treat the case accordingly. The defect is amendable; and an amendment, under such circumstances, would be allowed, even at this stage of the proceedings.

Against the bill, so amended, we have to consider the defence of the statute of frauds. This defence indeed goes to the whole scope and purpose of the bill, and if maintained, renders all the issues of no avail.

The position of the defendant is, that the clause in controversy is one of exception, and not of reservation, in a technical or legal sense. The question turns upon this distinction. If the defendant's mining rights are regarded as new rights, derived from its grantee under a reservation in the deed, then the operation of the clause, by which those rights were acquired, may be restricted in equity, without violation of the statute of frauds. A title or right acquired by the grantor, by reservation in a deed poll, stands in this respect upon the same footing as that which is acquired by direct grant or conveyance. But whatever is excluded from the grant by exception remains in the grantor as of his former title or right; and to modify the deed so as to limit and reduce that, either in extent or duration of the estate or right retained, is in effect to enlarge the operation of the deed and make it convey estate, title or rights which the written instrument will not operate to convey. This is contrary to the statute of frauds. *Glass* v. *Hulbert,* 102 Mass. 24.

The court are of opinion that the clause in the deed from the defendant to the plaintiff corporation, " reserving to the Stockbridge Iron Company the right of mining on the above granted premises, for the use of said company, an amount of ore not exceeding seven thousand five hundred tons annually, at a duty of thirty-seven and a half cents per ton, including all the facilities needful for doing the same," must be construed as a reservation of new rights to the grantor, out of the granted premises ; or else as the creation of such new rights by force of words of reserva-

tion, taking effect either by way of estoppel, or as a grant from the grantee by implication of law from the acceptance of the deed. Cruise Dig. tit. 32, *c.* 21, § 65 ; 2 Greenl. ed. 347, note upon *Thompson* v. *Gregory*, 4 Johns. 81. Washburn on Easements, *c.* 1, § 2, p[1] 5, referring to *Durham & Sunderland Railway Co.* v. *Walker*, 2 Q. B. 940, and *Wickham* v. *Hawker*, 7 M. & W. 63. *Doe* v. *Lock*, 2 Ad. & El. 705 ; *S. C.* 4 N. & M. 807. *Dyer* v. *Sanford*, 9 Met. 395. *Simonds* v. *Wellington*, 10 Cush. 313. *Vickerie* v. *Buswell*, 13 Maine, 289.

The property in the mines themselves, and in the ore they contained, must be held to have passed to the grantee by the deed. That which is reserved to the grantor is a license to enter upon the granted premises and exercise certain rights therein for the purpose of extracting from the mines a limited quantity of the ore, and revesting in the grantor the property in that which is thus separated from the mass. But until the ore is thus separated and become personal property, the title and legal possession of the whole rests in the grantee. The right of the Stockbridge Iron Company is an interest in land ; but it does not constitute a title to any specific part of the mines, or of the ore contained in them, either as real or personal property. Neither is it such an interest as can be separated or made specific in any other mode than by the exercise of the privileges defined in the clause of reservation. Until then it is indefinite and inoperative. *Thompson* v. *Gregory*, 4 Johns. 81. *Dygert* v. *Matthews*, 11 Wend. 35.

The substance of the reservation or implied grant does not consist in the easements secured to the grantor, but in the right to extract ore and thereby acquire title and possession thereof. The easements are merely incidents, as means to this end.

The reservation of an exclusive right of this nature might be held to retain in the grantor the property in the mines, operating as an exception from the grant. *Cardigan* v. *Armitage*, 2 B. & C. 197 ; *S. C.* 3 D. & R. 414. *Farnum* v. *Platt*, 8 Pick. 339. *Munn* v. *Stone*, 4 Cush. 146. *Jamaica Pond Aqueduct Co.* v. *Chandler*, 9 Allen, 159. But this right is not exclusive. There is nothing in the deed to restrict the grantee from working the mines at the same time, even to the entire exhaustion of the ore. Bainbridge on Mines (1st Am. ed.) 269.

The stipulation for a rate of duty by the ton, to be paid by the grantor, for all ore that should be mined, favors the construction of the clause as a reservation, rather than as an exception ; or at least as a right to be held and exercised by the Stockbridge Iron Company as one derived from the Hudson Iron Company, rather than one carved out of the former estate of the grantor, and withheld from the operation of the grant. The payment of such a duty is a recognition of the title of the party to whom it is to be paid, and indicates acquisition by the other.

In this view of the source of the defendant's rights, it is immaterial to this inquiry whether they arise by force of a reservation strictly, or by estoppel, or by implied grant. In either case, they are equally open to be restricted by rectification of the clause upon which they depend.

Such being our conclusion upon this point, it follows, as already indicated, that a material issue remains to be tried. As to that issue, the order for trial of the case by jury is unexecuted.

We do not think the defence of laches ought to defeat the bill, in this aspect of the case. If the assertion and attempted exercise of rights of mining, by the defendant, after ceasing to carry on its business at Stockbridge and selling its furnaces, was notice to the plaintiff of the claim now made by the defendant, still, supposing this issue to be found for the plaintiff, it was notice of a claim inconsistent not only with the original agreement, but also with the terms and legal effect of the deed, as originally understood by both parties. That the plaintiff adhered to the understanding and construction which had been common to both, and relied upon that construction of the deed as a sufficient answer to the claims thus made, is not to be imputed as laches, by the defendant, without proof that the plaintiff had become aware of the mistake, or ought to have discovered it, and was guilty of neglect in not doing so and seeking the remedy sooner. It is a sufficient answer to any such position, that the true construction of the clause is a matter of serious controversy and learned argument by counsel in this case.

If this construction, now sought to be established by the Hudson Iron Company, is the true one, the issues are all inappropriate, and the cross bill itself without foundation. The issues

were framed, at the request of the Hudson Iron Company, upon the contrary assumption. But as the question was not then argued, and as it goes to the foundation of both suits, it should be now considered.

It is contended that the language, "for the use of said company," is a restriction upon the exercise of the rights reserved to the grantor, limiting the purposes for which alone mining could be done ; that, as the Stockbridge Iron Company at that time was authorized only to manufacture pig iron at Stockbridge, and to work mines only for its own use, these limits of its corporate powers are to be imported into the deed, and thus furnish the measure of those purposes. Upon this construction, the rights would not be assignable, and would have ceased or become suspended when the Stockbridge Iron Company ceased to carry on its business of manufacture at Stockbridge, and sold its furnaces.

But we cannot give so restricted a construction, even against a grantor, to language which is so commonly employed in conveyances, and thereby has acquired a well known significance. When so employed, the phrase is expressive of the right of appropriation or enjoyment, rather than descriptive of the purposes or mode of the use. It does not call for any extrinsic aid for its interpretation.

The meaning contended for is not the natural and ordinary one ; there is nothing in the context, or in the application of the language to the subject matter, which creates an ambiguity ; and we think the facts in regard to the corporate powers of the grantor, and the entertained purpose of discontinuing its business, are so far extrinsic as not to be competent to raise an ambiguity for the purpose of settling it against the more obvious sense of the terms used.

Until the remaining issue has been again submitted to a jury by itself, we do not deem it necessary or expedient to proceed further with the original bill, or to consider the several other questions that have been argued before us.

The case will therefore stand for trial by jury upon that issue in the cross bill when amended ; and in that trial the facts established by the verdict upon the other two issues will be taken as conclusively settled between the parties.

*Ordered accordingly.*