HENRY F. HALL *vs.* FORTIS H. ALLIS.

Third Judicial District, New Haven, June Term, 1900.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

In his warranty deed the defendant covenanted that the land conveyed therein was free from all incumbrances except a certain mortgage of $8,000, that he would pay all interest thereon as it became due, also all taxes, and would "save the grantee harmless from all incumbrances to date." *Held* that inasmuch as the words quoted were those of the grantor, any doubt as to their import must be resolved in favor of the grantee; and that thus construed they included the principal as well as the interest of the $8,000 mortgage. (*One judge dissenting.*)

Argued June 12th—decided October 4th, 1900.

ACTION to recover damages for breach of covenant, brought to the Superior Court in New Haven County and tried to the court, *Elmer, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff for alleged errors in the rulings and findings of the court. *Error, judgment set aside and cause remanded.*

On or about November 15th, 1893, the defendant executed and delivered to the plaintiff a deed of land in the city of New Haven, the material parts of which are as follows:—

"To have and to hold the above granted and bargained premises, with the appurtenances thereof, unto him, the said grantee, his heirs and assigns forever, to his and their proper use and behoof. And also I, the said grantor, do for myself and my heirs, executors and administrators, covenant with the said grantee, his heirs and assigns, that at and until the ensealing of these presents I am well seized of the premises as a good indefeasible estate in fee simple, and have good right to bargain and sell the same in manner and form as is above written, and that the same is free from all incumbrances whatsoever, except mortgage of eight thousand dollars ($8,000), holden by Yale College; and the grantor hereby agrees to keep all interest on said first mortgage paid when due, also all taxes on said property as they mature, and save grantee harmless from all incumbrances to date.

"And furthermore I, the said grantor, do by these presents bind myself and my heirs forever to warrant and defend the above granted and bargained premises to him, the said grantee, his heirs and assigns, against all claims and demands whatsoever, except said mortgage.

"In witness whereof I have hereunto set my hand and seal, this fifteenth day of November, A. D. 1893.

"The condition of this deed is such that whereas Edward P. Yale, of New Haven, Ct., is justly indebted to the said grantee in the sum of six thousand dollars, as evidenced by three several promissory notes, each for two thousand dollars, and each of even date herewith, payable at New Britain National Bank, to said grantee, or order, two, three, and four years after date, respectively, with interest annually.

"Now therefore, if said notes shall be well and truly paid according to their tenor, then this deed shall be void; otherwise, to remain in full force and effect."

Further facts are stated in the opinion.

*Henry G. Newton* and *Harrison Hewitt*, for the appellant (plaintiff).

*Frank L. Hungerford*, for the appellee (defendant).

ANDREWS, C. J. The only question in controversy in this case is whether or not the covenant in the mortgage deed given by the defendant to the plaintiff bound the defendant to save the plaintiff harmless from all the incumbrances on the land therein conveyed, including the principal sum due to Yale University, or only bound him to save the plaintiff from the interest on that debt and other incumbrances, if any, not including the said principal sum.

The covenant, read literally, is to save the plaintiff harmless from all the incumbrances on the land. This would seem to include the principal more certainly than it does the interest. The principal was an incumbrance then outstanding. The interest, some of it at least, did not accrue until afterwards. The trial court, after hearing the evidence, decided that the defendant was not bound to save the plaintiff harmless from that principal sum.

The circumstances which were shown in evidence and which were supposed to aid the court in the construction of the deed, may be condensed from the finding and stated as follows: Edward P. Yale was the president of the Yale Brick Company, a corporation doing business in Berlin. He desired to obtain control of the stock of that company. A. J. Sloper and John B. Minor, individually and as trustees for certain others, owned $14,500 worth, par value, of that stock. If Mr. Yale could obtain their stock he could control the entire stock of the company. They were willing to exchange that stock for certain pieces of land owned by the plaintiff situated in Meriden, and to give $500 in money in addition.

The plaintiff was willing to sell these pieces of land for their fair value, $7,500, but did not want the Brick Company stock. Mr. Yale was apparently without sufficient capital or credit of his own to carry out his plans. The defendant was the son-in-law of Mr. Yale. He had both capital and credit, and was desirous to aid Mr. Yale in getting control of the stock. Negotiations were had by Mr. Yale and the defendant with the plaintiff, the result of which was that the plaintiff conveyed his land to A. J. Sloper and the others. They conveyed to the defendant their stock and gave him $500 in money. The Brick Company gave to the plaintiff its note for $500 and an agreement to deliver to him $1,000 worth of brick. Mr. Yale gave to the plaintiff his three notes, each for the sum of $2,000 with interest, payable in two, three and four years from date, respectively; and the defendant gave to the plaintiff the said mortgage deed with the covenants as therein set forth.

The arrangement between these persons seems to have been a tripartite one. The plaintiff was one of these parties; the defendant and Mr. Yale were another; while Sloper and the others were the third. It may be true that as between himself and Mr. Yale the defendant was only a surety; but in this transaction with the plaintiff, he and Mr. Yale were only one party, just as Sloper and Minor and the persons for whom they were trustees were only one party.

The $500 note of the Brick Company to the plaintiff was paid. The $1,000 worth of brick were delivered; at least no question is made in respect to them in this case. The interest on Mr. Yale's three notes was paid for two years. Mr. Yale died insolvent in November, 1896. His estate has paid nothing. The Yale Brick Company went into insolvency in October, 1896, and nothing has been paid by its trustees. Yale University brought its foreclosure action in March, 1897, against the defendant and the plaintiff, and recovered judgment. The law day for the defendant expired on the first Monday of May, 1898, and for the plaintiff on the second Monday of the same month. Neither redeemed, and the

title of the University became absolute. The defendant paid to the University all the interest on said debt, and all the taxes and liens on the property. He did not pay the principal. The value of that property at the date of the mortgage was $12,000; at the time of the foreclosure it was about $8,000, just the amount for which it was mortgaged to the University. The said three notes of Mr. Yale, with the interest after two years from their date, are still due and unpaid.

If by the proper construction of said mortgage deed of the defendant he covenanted therein to save the plaintiff harmless from the principal sum of the debt due to Yale University, then there is error in the judgment; that covenant has been broken, and judgment should be rendered for the plaintiff to recover the damages he has sustained, that is, the amount of the said notes and interest.

The language of this deed is the language of the defendant. He prepared the covenant. If the language is doubtful, it is because he made it doubtful. He cannot have the doubts solved in his favor. He who speaks by any writing ought to express himself with clearness. If he does not do so any doubt must be explained to the advantage of the other party. 1 Sw. Dig. 239; 1 Shep. Touch. 87. Reading the words of this deed in the light of the facts shown by the evidence, and applying to the case the rules of construction we have cited, it seems to us that the plaintiff is entitled to have the covenant read so as to save him harmless from all the incumbrances that were on the land conveyed, including the principal of the University debt as well as the interest and the liens and costs.

In the view of the case which we have taken it is unnecessary to consider the testimony of Mr. John Q. Thayer.

Upon the facts set forth in the finding we think the plaintiff is entitled to a judgment for the notes and interest.

There is error and the judgment is set aside; the case is remanded to the Superior Court to be proceeded with according to law.

In this opinion the other judges, except HALL, J., concurred.

Hall v. Allis.

HALL, J. (dissenting). The facts proved by extrinsic evidence, as stated in the finding, strongly favor the construction of the covenant in question contended for by the defendant. I cannot concur in the conclusion reached by the majority of the court, that the record shows that in the transaction with the plaintiff, the defendant and E. P. Yale were but one party, or that they were to be so regarded in their dealing with the trustees, Sloper and Minor. On the contrary, as I interpret the finding, neither the plaintiff nor any other party to the transaction understood that the defendant was the purchaser of the plaintiff's land, or that he was to pay for it, or that he was to own or pay for the brick stock, or was to have any interest in it, except as a security against loss by having mortgaged his property, or that he was to do anything further in the transaction than to give a second mortgage upon property worth $12,000, subject to a mortgage to Yale College of $8,000, to secure the payment of E. P. Yale's notes to the plaintiff.

If the defendant also undertook to save the plaintiff harmless from the first mortgage, which, under the present circumstances, would require him to pay the E. P. Yale notes of $6,000 with unpaid interest, such promise must be found in the language of the mortgage deed.

The language of the covenant of the mortgage, " and save the grantee harmless from all incumbrances to date," should not be construed as a promise to protect the plaintiff against the first mortgage. Such a construction would give to these words a meaning inconsistent with that of the other covenants of the deed, and would make them a covenant to protect the fee of the land against all incumbrances, instead of an undertaking to protect the equity of redemption, which was alone conveyed by the mortgage, and which, from the entire language of the deed, was, I think, all that was intended to be protected as a security to the plaintiff.

The defendant was not personally liable, even to Yale College, for the first mortgage debt, as it appears that the bond and mortgage for $8,000 was given by E. P. Yale before the defendant became the owner of the property.

As indicating that it was not the intention of the defendant to assume the $8,000 mortgage, or to protect the plaintiff from that incumbrance, we find in the mortgage deed from the defendant to the plaintiff, first, that the mortgage to Yale College is expressly excepted from the covenant against incumbrances; second, that it is also excepted from the final covenant to warrant and defend the premises conveyed; and third, that the defendant expressly covenants what he will do regarding the first mortgage, namely, that he will keep all interest on it paid when due. These covenants should be held to so qualify the absolute covenant in question, that its true meaning is to save the grantee harmless from all incumbrances other than the first mortgage.

It is true, that the exception of a certain mortgage from the covenant against incumbrances has been held not to necessarily relieve the grantor from liability under the covenant of warranty from the operation of which the mortgage is not excepted, upon the ground that such qualified and absolute covenants are not of the same import, and therefore not necessarily inconsistent with each other, since a grantor may be unwilling " to guarantee his title generally, and yet may readily undertake that his grantee shall not be disturbed." The deduction drawn from the existence of such absolute and limited covenants in the same deed being " that the covenanter admits that there is an incumbrance upon the property, but undertakes and warrants that it shall never disturb the title of the grantee." 8 Amer. & Eng. Ency. of Law (2d ed.), p. 75; *King* v. *Kilbride*, 58 Conn. 109, 117; *Estabrook* v. *Smith*, 6 Gray, 572. But these cases do not assume to state it as a rule that a covenant of warranty which is absolute in its terms will always be so construed, although a prior mortgage be excepted from the covenant against incumbrances. Undoubtedly the true rule is to ascertain from the entire instrument the real intention of the parties, and to construe the covenant with reference to such intention. *Killian* v. *Harshaw*, 7 Ired. 497. See footnote to *Gainsford* v. *Griffith*, 1 Saund. 51, 61. The decision of each case must depend upon all the provisions of the particular deed under

Hall *v.* Allis.

consideration; and it has accordingly been frequently held that where a deed only purports to convey an equity of redemption, covenants absolute in their terms may properly be construed as applying only to the equity of redemption conveyed by the deed. *Brown* v. *South Boston Savings Bank*, 148 Mass. 300; *Ayer* v. *Philadelphia & B. F. B. Co.*, 157 id. 57; *People ex rel. Weber* v. *Herbel*, 96 Ill. 384; *Drury* v. *Holden*, 121 id. 130; *Freeman* v. *Foster*, 55 Me. 508; *Hooper* v. *Smyser*, 90 Md. 363. And so in the case at bar, the inquiry should be: did the covenant to save the grantee harmless from all incumbrances refer to incumbrances upon the fee, or upon the equity of redemption conveyed by the second mortgage?

The cases of *King* v. *Kilbride* and *Estabrook* v. *Smith, supra*, do not apply here, since the decisions in those cases were based upon the fact that the covenant against incumbrances, and the covenant to warrant and defend, were not directed to the same thing, and that therefore the exception of a prior mortgage from the former did not render it inconsistent with the latter, from which such mortgage was not excepted. The covenant in the case before us, to save the grantee harmless from all incumbrances, is not what is known under our law as a covenant against incumbrances, and which is personal in its character, but is a covenant to indemnify against incumbrances, which is executory, and, like the covenant of warranty following it, runs with the land. Rawle on Covenants for Title (5th ed.), §§ 70, 204; *Mitchell* v. *Warner*, 5 Conn. 497, 516; *Davis* v. *Lyman*, 6 id. 249, 256; *Butler* v. *Barnes*, 60 id. 170, 192.

The general covenant of warranty is an undertaking to protect the land against all lawful claims, and that the grantee shall enjoy the land free from all incumbrances; and therefore includes a covenant to save the grantee harmless from an existing mortgage not excepted from its operation. *King* v. *Kilbride, supra*. If it was intended, therefore, that the defendant should protect the plaintiff against the first mortgage, it is difficult to understand why that mortgage should have been expressly excepted not only from the covenant

Hall *v.* Allis.

against incumbrances but also from the covenant of warranty. The construction adopted by the majority opinion renders the covenant in question, and the covenant to warrant and defend, since both refer to the same subject, inconsistent with each other; inasmuch as it is provided by the former that the grantor is to defend against the first mortgage, and by the latter that he is not to defend against it.

That the covenant in question was intended to apply only to the equity of redemption conveyed by the mortgage, is made still more apparent by the defendant's covenant to pay the interest on this particular mortgage. His promise is, not that he will pay or assume the mortgage, but that "he will keep all interest on said first mortgage paid when due." If he has covenanted to save the plaintiff harmless from the first mortgage, there seems to be no reason why he should also have agreed to pay the interest on that mortgage. The purpose of the covenant to pay the interest on the first mortgage was evidently this: by excepting the first mortgage, as he did, from the covenant against incumbrances and of warranty, he excepted from the operation of both of these covenants not only the principal of the first mortgage debt, but the interest then due or that might thereafter become due. *Smith* v. *Read*, 51 Conn. 10; *Shanahan* v. *Perry*, 130 Mass. 460. But desiring to limit the excepted incumbrance to the principal of the first mortgage debt, he covenanted to pay the interest as it became due, thereby undertaking that if it became necessary for the defendant, in order to protect his security, to pay off the first mortgage, or to redeem in case of foreclosure, he would be required to pay only the principal of the first mortgage debt.

The deed is somewhat carelessly drawn, but I think from the language of the entire instrument it is sufficiently clear that the defendant intended to give the plaintiff a mortgage upon the equity of redemption after the Yale College mortgage, limiting that incumbrance to the principal of the mortgage debt, and to covenant to protect that title; and that the covenant to save the grantee harmless from all incumbrances is qualified by the other covenants and provisions of the deed,

and is limited to all incumbrances other than the first mort-gage. As this construction reconciles the two otherwise repugnant covenants of the mortgage, is consistent with the purpose of the deed to convey only an equity of redemption, and with the intention of the grantor as shown by the language of the entire deed and the situation of the parties, it should be adopted.

The fact that two constructions are possible does not justify the application of the maxim, *verba chartarum fortius accipiuntur contra proferentem.* That doctrine should only be resorted to when all other rules of exposition fail. 1 Sw. Dig. 234; 2 Black. Comm. 380. There was no error in construing the covenant in question as claimed by the defendant.