## FORTIS H. ALLIS *vs.* HENRY F. HALL.

First Judicial District, Hartford, October Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

While an independent suit to restrain a party from enforcing a judgment of the Superior Court can be brought to that court only (General Statutes, § 537), it is not essential that it should be brought in the same county as that in which the first action was tried and determined.

A court of equity may reform a written instrument which, by reason of a mutual mistake of the parties either in a matter of fact or of law, fails to express their true intent and meaning.

Where one of the parties seeks to give the instrument a different meaning from that which both parties accorded to it when it was drawn, and to hold the other liable on it as thus construed, the latter should ordinarily protect himself by filing a cross-complaint for a reformation of the instrument; otherwise he may be precluded from availing himself of that remedy by the rule or doctrine of *res judicata*—which includes not only such defenses as were actually interposed, but such also as might and ought to have been made.

Allis *v.* Hall.

That rule, however, which rests upon and grew out of considerations of
public policy in the administration of justice, has important and
recognized qualifications, and its application will not be permitted
where it will work a manifest wrong or injury to a litigant who
has acted in good faith and with reasonable diligence in the pro-
tection of his own interests.

In the present case *A*, the plaintiff, when sued by *H*, the defendant,
on the written agreement, did not ask for its reformation, because
he knew the construction urged by *H* was not in accord with their
real agreement, and also because he was advised by competent
counsel, and in good faith believed, that *H's* contention could not
be upheld. As soon, however, as this court had decided otherwise,
*A* asked leave of the trial court to file a counterclaim for a reforma-
tion of the writing, which was denied on the ground that it came
too late. He then brought the present independent action, for a
reformation of the contract, and for an injunction restraining *H*
from taking out execution on his judgment. The trial court hav-
ing found that the contract as drawn did not express the true
agreement of the parties, reformed it accordingly and granted the
injunction. *Held :—*

1. That the situation was one which justly appealed to the judicial
conscience, and fully warranted the court in relaxing the rule of
policy above stated.

2. That the refusal to permit *A* to file a cross-complaint in the former
action was simply an exercise of the trial court's discretionary con-
trol over pleadings, and was not an adjudication of the plaintiff's
right to a reformation.

3. That the fact that *A* relied upon the construction of the instrument
which had been common to both parties and accorded with their
real agreement and intent, as a sufficient ground of defense in the
first action, was not to be imputed to him as laches nor to have
the effect of an estoppel, under the circumstances disclosed by the
record; especially as *H*—who must be presumed to have known
the real agreement, and therefore the falsity of the instrument by
means of which he was seeking to render *A* liable—was in no posi-
tion to invoke the doctrine of laches or estoppel.

4. That the doctrine of election had no application to *A's* situation.

Absence of direct contradiction by the mouth of a witness does not
make a so-called fact " undisputed," within the meaning of the
Rules of Court, p. 93, §10.

It is one of the important functions of a trial court to determine the
relative credit to be given to oral evidence ; and this is a province
which this court cannot invade.

On his direct examination a witness testified that at a given date the
defendant was of sound mind. *Held* that he could not fortify or
reinforce that opinion, on his direct examination, by showing that
within a few days after such date he had, with the advice of his

counsel, given the defendant a power of attorney involving the care and disposition of his entire property.

It is not important the record should be corrected in order to show that an elementary claim of law was urged upon the trial court, unless it affirmatively appears that the court did not accept the proposition as correct in arriving at its conclusion.

Until the cost of such printing has been paid to him, the clerk is justified in refusing to print evidence, the only place or purpose of which in the record is incident to an effort to secure a review and correction of the finding. The cost of such printing is by no circumvention to be cast upon the State.

Argued October 15th, 1903—decided January 6th, 1904.

SUIT for the reformation of a mortgage deed, brought to the Superior Court in Hartford County where a demurrer to the complaint was overruled (*Roraback, J.*), demurrers to the answer and amended answer were sustained (*Case, J.*), and the cause was afterwards tried to the court, *Roraback, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant. *No error.*

*Henry G. Newton* and *Harrison Hewitt*, for the appellant (defendant).

*Charles E. Perkins* and *Frank L. Hungerford*, for the appellee (plaintiff).

PRENTICE, J. This case is a sequel to that of *Hall* v. *Allis*, 73 Conn. 238, which was an action to recover damages for the breach of the covenants of a mortgage. The facts of that case and its history are pertinent to this. In so far as they are recited in the report of that case they need not be repeated here. Upon the announcement of the decision of this court in the former action, the present plaintiff, being the defendant therein, moved for leave to file a cross-complaint asking, upon appropriate allegations of mistake, that‾ the mortgage upon which the action was brought might be reformed so that the principal of the Yale College mortgage should be excepted from the operation of its covenants and it thus be made to express what the proposed cross-com-

plaint alleged was the agreement and intent of the parties thereto, which agreement and intent Allis had theretofore unsuccessfully contended was in fact expressed by the mortgage as drawn. This motion was denied, upon the ground that it was made too late, and judgment was thereupon rendered that Hall recover $7,821.70 damages and costs. After the denial of this motion, and before final judgment was rendered, Allis brought this action to the Superior Court in Hartford county, seeking a reformation of said mortgage in the way already indicated, and an injunction restraining Hall from taking out execution on the judgment rendered, or to be rendered, in the prior case, and from taking any measures or steps to enforce the collection or payment of the judgment.

The complaint alleges, in substance, and the court finds, that the parties, prior to the execution of the mortgage, agreed that the principal of the Yale College mortgage should be excepted from the operation of its covenants; that the mortgage should be upon the equity in the property, subject to the college mortgage, the mortgagor agreeing to pay the interest upon that mortgage debt, and the taxes on the property, and keep the equity over and above the principal sum clear, but not to be holden to save the defendant mortgagee harmless from said principal or protect him therefrom; that the mortgage as drawn and executed was intended by both the parties thereto to express said agreement; that by the mistake of the scrivener who drew it and the parties who executed it, it failed to do so; and that it was delivered by Allis to Hall under the mistaken belief, mutually entertained by them, that it did so express said prior agreement, and with the intention that it should. It is also alleged and found that Allis, up to the time of said decision by this court, fully believed, as he was advised by competent counsel, that the covenants of said mortgage as drawn did not bind him to protect Hall from the principal of the mortgage debt, and that his conduct theretofore and in said prior action was had in good faith, relying upon said belief.

Other pertinent facts are, that the transfer of the stock of

the Brick Company by Sloper and his associates to Allis was for the purposes of collateral security; that at some time within one or two years after the execution of said mortgage, Hall made a claim upon Allis, that by the legal construction thereof the latter was bound to protect him, Hall, from the principal of said mortgage debt to Yale College, and that Allis repudiated said claim; that on December 23d, 1896, Hall brought an action of ejectment to obtain possession of the mortgaged property, said action being based upon his ownership of said second mortgage; that on February 5th, 1897, Allis, while said action of ejectment was pending, for the protection of Yale College under its first mortgage, surrendered to said college the possession of said premises by an instrument in writing, which provided that Allis should pay to the college any deficiency that might at any time be due to it in case the rents of said property should not be sufficient to pay the taxes, insurance, repairs and interest on its mortgage; that the college entered into possession and collected the rents, and that before the law-day for the redemption of the mortgaged premises by the defendant expired, Allis had paid to Yale College all that was due upon said mortgage debt above the principal, and all the costs of the foreclosure proceedings, so that there remained due to said college on said law-day the sum of $8,000 and no more. The facts involved in the prosecution of the former case are set up in the complaint and found.

Before entering upon a discussion of the defendant's claims of error to which he has given most prominence, it is well to inquire whether, upon the facts found, the plaintiff would in any event be entitled to have a reformation of the mortgage as prayed for. The defendant insists that the mistake is one which equity will not undertake to correct. If this is so, the very foundation of the plaintiff's action is taken away, since he would be unable to show the loss, in the former action, of a meritorious defense. The full discussion of this subject had in the opinion in *Park Bros. & Co.* v. *Blodgett & Clapp Co.*, 64 Conn. 28, and the conclusion there reached, render it unnecessary to renew the discussion here. Clearly,

Allis *v.* Hall.

the circumstances relating to the mistake, which are disclosed by the finding, are such as, under the principles enunciated in that case, would justify a reformation in equity.

The defendant contends that the Superior Court in Hartford county has no jurisdiction to grant the relief prayed for and given, or, more strictly speaking perhaps, the vital part of it, involved in the prayer and judgment for an injunction restraining the defendant from making use of the judgment rendered in his behalf in the Superior Court in New Haven county.

To the Superior Court is reserved, by statute, the exclusive power to grant equitable relief against causes pending, or judgments rendered, in that court. General Statutes, § 537. If, therefore, the contention made is well founded, it must be either for the reason that the present proceeding is so connected with the former action as to be in its essence a part of it, or for the reason that the Superior Court—which in this State is one tribunal over the whole State—has no jurisdiction in an independent action to enjoin parties from making use of a judgment rendered by that court in another county. The reasoning and conclusions in *Smith* v. *Hall*, 71 Conn. 427, are decisive against the existence of these conditions.

The present action is an entirely independent one. It does not seek anything directly or incidentally affecting the former case, nor is it in aid of any such attempt. A new trial of the former cause is not asked. It is not proposed to disturb the former judgment. No judgment is prayed for affecting in any way the former proceedings. No process has issued or is asked to issue to the court which determined the former case. It is simply sought to prevent an individual availing himself, contrary to equity and good conscience, of a judgment which he has obtained, and which, it is assumed, will stand of record unreversed and unmodified. *Tyler* v. *Hamersley*, 44 Conn. 419.

That the power exists, and must exist, for one court to enjoin the use of a judgment obtained in another court of concurrent jurisdiction, is clear. *Erie · Ry. Co.* v. *Ramsey*,

45 N. Y. 637. The reason, drawn by some courts from pub-
lic policy, for the doctrine that courts should not be per-
mitted to so interfere with the judgments of courts of con-
current and co-ordinate jurisdiction, is one which does not
appertain—to the same extent at least—under our organiza-
tion of the Superior Court as under judicial systems which
create independent circuits with a separate judge or judi-
ciary for each circuit. We have not adopted that rule of
policy. *Smith* v. *Hall,* 71 Conn. 427.

The defendant next relies upon the doctrine of *res judi-
cata.* He says that the matters involved in the present ac-
tion for a reformation have become adjudicated by the judg-
ment in the former action. It is, of course, true, that they
have not in fact been adjudicated. The defendant's posi-
tion, strictly speaking, is, therefore, that as these matters are
such as might have been pleaded defensively in the former
action, he is now, by the judgment therein, as much precluded
from availing himself of them as he would be had he in fact
pleaded them ; or at least that he is so far concluded that a
court of equity will not take cognizance of them to restrain
the operation of the judgment.

The general rule has long been recognized, that equity
would not interpose to enjoin one from reaping the benefits
of a judgment at law for reasons which might have been
presented as a legal defense to the action. *Post* v. *Trades-
men's Bank,* 28 Conn. 420 ; *McBride* v. *Little,* 115 Mass.
308 ; *Cromwell* v. *County of Sac,* 94 U. S. 351. This rule
has been extended to embrace equitable defenses, where such
defenses were by statute or otherwise permitted to be made
in actions at law ; *Wilson* v. *Buchanan,* 170 Pa. St. 14 ; and
to equitable defenses and counterclaims, where the functions
of courts of common law and chancery have been united in
one tribunal, and the distinctions between actions at law
and suits in equity and the forms of legal and equitable pro-
cedure have been abolished, as in most code States. *Win-
field* v. *Bacon,* 24 Barb. 154 ; *Savage* v. *Allen,* 54 N. Y. 458 ;
*Kelly* v. *Hurt,* 74 Mo. 561 ; *Tuttle* v. *Harrill,* 85 N. Car.
456 ; *Ricker* v. *Pratt,* 48 Ind. 73 ; *Hopkins* v. *Medley,* 99 Ill.

Allis *v.* Hall.

509; *Eastern B. & L. Asso.* v. *Welling,* 116 Fed. Rep. 100. This extension has, however, by no means received universal approval. There are not a few authorities to the contrary. *Lorraine* v. *Long,* 6 Cal. 452; *Hough* v. *Waters,* 30 id. 309; *Witte* v. *Lockwood,* 39 Ohio St. 141; *Fannin* v. *Thomasson,* 45 Ga. 533; *Hempstead & Conway* v. *Watkins,* 6 Ark. 317; *Dorsey* v. *Reese,* 53 Ky. 157; *Hill* v. *Cooper,* 6 Ore. 181; Pomeroy's Code Remedies, § 804; *Little Rock, etc., Ry. Co.* v. *Wells,* 54 Am. St. Rep. 216, note.

It is unnecessary to enter upon an exhaustive discussion of this question in all its aspects, including the distinction in effect, sometimes sought to be made between equitable defenses pure and simple, and equitable counterclaims furnishing the foundation for affirmative equitable relief prayed for. It would seem quite clear in reason, that the same effect ought to be given to judgments, as concluding available equitable counterclaims of the character of the one in question—being one which goes directly to the destruction of the plaintiff's claimed right of action—as is given to them as concluding available legal defenses. For the purposes of this case we may well so assume, as the defendant would have us do.

This general rule which we have been considering is not without important qualifications, which have had a recognition as extensive as that of the rule itself. A succinct statement of them as found in an exhaustive note appended to the case of *Little Rock, etc., Ry. Co.* v. *Wells,* 54 Am. St. Rep. 216, is as follows: Injunctions will not lie where a party has failed to make a defense which he could have made and ought to have made, unless his failure to do so was due to some cause recognized under the circumstances as a ground for equitable relief. In *Tucker* v. *Baldwin,* 13 Conn. 136, 144, this court approved the following statement of the law by Judge Story: "In all cases, where by accident, mistake, fraud or otherwise, a party has an unfair advantage in proceedings in a court of law, which must necessarily make that court an instrument of injustice, and it is, therefore, against conscience that he should use that advantage, a court of equity will interfere,

and restrain him from using the advantage which he has thus improperly gained." See also *Tyler* v. *Hamersley*, 44 Conn. 419.

An examination of the many cases involving an application of this principle, discloses that fraud, collusion, accident, mistake, surprise and ignorance of the defense, when the negligence of the party is not one of the producing causes, are frequently recognized as creating situations justifying equitable interference, where it is also shown that a meritorious defense has been lost thereby, that the execution of the judgment would be against equity and good conscience, and that there is no other adequate remedy. *Tucker* v. *Baldwin*, 13 Conn. 136 ; *Carrington* v. *Holabird*, 17 id. 530 ; *Pearce* v. *Olney*, 20 id. 544 ; *Tyler* v. *Hamersley*, 44 id. 419, 420 ; *Stanton* v. *Embry*, 46 id. 595.

The rule, however, by its general phraseology, recognizes that no enumeration of causes under familiar classifications would fully describe all the situations which would call for equitable intervention in order that the general principle of non-interference might not by its too rigid enforcement work wrong and injustice. The rule is not one of property or of right. It is purely one of policy and of judicial origin. The law conceives that, in general, public policy in the administration of justice calls for the application of the principle that a judgment silences defenses, and hence the rule of duty that a defendant shall plead all defenses which are available to him, or thereafter be barred therefrom. *Welles* v. *Rhodes*, 59 Conn. 498.

The rule which fixes the consequences for the failure in duty, if it is to be fair and reasonable, must necessarily have respect both to the ability of the litigant to perform the required duty, and to any just and sufficient excuses for not performing it. For these reasons it is recognized that when the failure to make a defense has arisen from circumstances beyond the control of the party, a case justifying the relaxation of the rule is made out. It is for the same reason that ignorance of a defense, without fault, is held to be a sufficient excuse. *Barker* v. *Elkins*, 1 Johns. Ch. 465. So it must

Allis v. Hall.

be with any excuse which, under the strict scrutiny required, appeals to the conscience of the chancellor as sufficient, under the circumstances, to call for a relaxation of the arbitrary rule of policy in order that wrong may not triumph under its cloak. Fraud, collusion, accident, mistake and surprise, unmixed with negligence, are by universal consent regarded as furnishing such excuses. They do not, however, complete the list, and no enumeration of conditions can. The conscience of the court acting along recognized lines must, after all, supply the test for each case, and hence the elastic language of the rules noted, and of any statement of the rule which aims to be comprehensive.

"The general reasoning upon which this doctrine is maintained, is the common maxim, that courts of equity, like courts of law, require due and reasonable diligence from all parties in suits." 2 Story's Equity Jurisp. (12th ed.) § 896. Diligence in the production of defenses may well be required of defendant litigants, at the peril of forfeiture. It is open to doubt, however, whether the rule of duty can fairly be carried farther, and whether it is so carried. Many statements of the rule are careful to embody this limitation, as in *Tyler* v. *Hamersley*, 44 Conn. 419, 420, where we said: "But after a judgment an injunction will not be granted to stay its execution, unless there has been fraud or collusion in obtaining it or the verdict upon which it was founded, or where the party has been unable to defend himself effectually at law, without any fault or negligence of his own, or," etc. See also *McBride* v. *Little*, 115 Mass. 308. If the rule of duty is the exercise of diligence, the penalty for failure ought certainly not to be carried further. If this is so, the test in any case is a much simpler one than many have seemed to regard it, and the barrier against equitable intervention, in an otherwise proper case, is not arbitrarily set up against anything not involving a failure in the former case to use proper diligence in making available defenses. The exigencies of this case, however, do not require us to assert this proposition.

It remains to consider the present plaintiff's conduct in

the former action, in its relation to the principles of law involved, and the circumstances presented, as they appeal to the judicial conscience. The facts, as found to exist, disclose that the plaintiff in the former action took advantage of the terms of an instrument between himself and the defendant therein, which by mutual mistake did not express the true agreement between them, to recover thereon a judgment for nearly $8,000, to which he was not entitled. Knowledge of this fact must be imputed to him, as he was a party to the real agreement and the mistake, and his conduct judged thereby. His conduct in pursuing his action, therefore, involves in legal contemplation a breach of faith, a breach of agreement, and, by a wrongful assertion of the false instrument, an attempt to obtain a judicial sanction to a legal fraud. *Essex* v. *Day*, 52 Conn. 483. The judgment obtained is that sanction successfully obtained. Its execution will consummate the fraud whereby $8,000 or thereabouts will be transferred from the present plaintiff, who is justly entitled to it, to the present defendant, who has no right to it. Such is the legal aspect of the situation, whatever the defendant's real motive and belief may for any reason have been.

The present plaintiff, in attempting to prevent the rendition of this wrongful judgment, made use of certain endeavors. During the pendency of the action, and down to the time of the decision of this court, he believed that the mortgage as drawn expressed the prior agreement that it was intended to evidence, and in good faith acted upon that belief. His counsel, who were competent attorneys, so advised-him. This belief and advice were not without substantial justification in the instrument itself. A majority of this court held that the better construction was otherwise, but it is apparent, both from the language employed and the history of the cause, that there was room for a difference in honest and competent opinion. Surely one who, with the plaintiff's knowledge of the facts and his advice, held a .confident belief that his construction was, correct, and consistently insisted and relied upon that construction

and founded his defense upon it, cannot fairly be held to have acted an unreasonable or negligent part. We cannot accuse him of an unwarranted belief. He is open to no charge of bad faith. He was simply consistent. Even though we may conceive that he might have assumed in his pleadings a safer double attitude, clearly he ought not to be penalized by the loss ·of his rights because he was, under the circumstances, firm in his faith and consistent in asserting his *bona fide*, not unfounded, belief.

As soon as the decision of this court made known to him his error, he acted promptly and presented to the court his cross-complaint asking for a reformation and asked leave to file it. The court denied his request. Thus by a power beyond his control was he prevented from having his contention adjudicated in the original action. Had the court granted his motion, as it might, he would not be here to-day. For the denial he cannot, of course, be held responsible. Whatever responsibility is upon him arises from his delay in presenting the cross-complaint, which delay consisted wholly of his conduct prior to the decision which has already been fully discussed.

We have here a case, then, in which the defendant was guilty of no lack of proper diligence for which he should be penalized to the extent threatened, in which, acting reasonably, he was unable to defend himself effectually against an unjust claim, and yet has had rendered against him a judgment for which there is no foundation in right. If his present prayer is denied, he loses important rights as the result of the exercise of judicial discretion in the denial of his request to amend. Clearly the situation is one which should justly appeal to the judicial conscience, and that so strongly as to justify a relaxation of the rule of policy, which was not designed to cloak so great a wrong.

We have thus far made no allusion to the case of *Botsford* v. *Wallace*, 72 Conn. 195, upon which the plaintiff has so strongly relied. So many distinctions can be drawn between the circumstances of that case and this, and between the legal principles involved in the two, that we have been

unable to give to it the weight as an authority for the plaintiff's contention which has been claimed for it. Its conclusions are in harmony with those here reached, but they can scarcely be regarded as decisive of the present.

It is incidentally claimed by the defendant, that the action of the court in the former case, in denying the motion for leave to file the cross-complaint, amounted to an adjudication or conclusion of the plaintiff's right to a reformation. There was no adjudication, for the matters in the cross-complaint were never permitted to be pleaded. There was no conclusion, since the disallowance of the motion was simply an exercise of the court's discretionary control over pleadings. It did not have anything to do with the merits of the cross-complaint. It merely refused an opportunity for a hearing and adjudication, for the sole reason that the new matter came too late. To attach the conclusiveness of adjudication to such an exercise of judicial discretion, from which there is no appeal, would be to hold a harsh doctrine for which there is no warrant.

The defendant next appeals to the doctrines of laches and estoppel, to demonstrate that the court below erred in the rendition of its judgment. The claim is, that the plaintiff delayed taking steps for a reformation of the mortgage for so long a time that, on account of the delay and the resulting loss occasioned by what transpired in the interval, and what the plaintiff himself did or caused during that time, he ought not in equity to have the relief he asks, but should be estopped therefrom.

Laches consists in an "inexcusable delay in asserting a right." *Byrne* v. *Schuyler Electric Mfg. Co.*, 65 Conn. 336. Laches involves negligence. It arises from a failure in duty. Without such failure there can be no laches. It is "inexcusable negligence and inattention" to one's interests. *Smith* v. *Duncan*, 16 N. J. Eq. 240. An equitable estoppel involves conduct inducing another to believe and act to his prejudice.

The facts relied upon to establish the laches and create the estoppel are set out in paragraphs ten to twenty-one, in-

clusive, of the answer. To these paragraphs the plaintiff demurred and the demurrer was sustained. The evidence relating to these allegations was, however, received, the facts found, and the defendant's claim made and passed upon. The defendant was, therefore, not harmed by the action of the court in sustaining the demurrer. Lest, however, there should be any question upon this point, we will consider the defendant's claims in the light of the facts as alleged, as well as of those found.

Before entering upon the inquiry it is well to notice the attitude in which the two parties appear. No charge of laches or misleading conduct is made on the part of the plaintiff subsequent to the decision of this court referred to. Prior to that time he was acting in the good-faith belief, based upon reasonable grounds, that the mortgage did in fact except the principal of the Yale College mortgage from the operation of its covenants, and therefore needed no reformation to make it express the true agreement of the parties. The plaintiff's conduct must be judged in the light of this fact. *Stockbridge Iron Co.* v. *Hudson Iron Co.*, 107 Mass. 290.

The defendant, on the other hand, was and is seeking to use what is found to have been a false instrument in order to consummate a legal fraud upon the plaintiff. Knowledge of the falsity of the instrument and the wrong of his conduct, must be imputed to him, since he was a party to both the original agreement and the mutual mistake. His imputation of laches, and his claim to avail himself of an equitable estoppel, must be judged in view of these two facts. In view of the fraudulent purpose which he is seeking to accomplish, it is to be observed that he is not in a position to appeal with much force to equitable principles to aid him to effect it. In view of his knowledge of the true agreement, of the mistake, and of the plaintiff's assertion of the true agreement, his attempt to assert the doctrine of laches, or to establish that by any conduct of the plaintiff's he has been induced to act to his prejudice, must be beset with difficulties. The law requires diligence largely for the

protection of persons who may, in their innocence, suffer from unreasonable delay. Its application assumes a different aspect when the party who appeals to its protection is one who not only knows the adverse claim and the assertion of it, but the very facts which establish the claim to be a valid one. *Essex* v. *Day*, 52 Conn. 483 ; *Williams* v. *Wadsworth*, 51 id. 277 ; *Stockbridge Iron Co.* v. *Hudson Iron Co.*, 107 Mass. 290.

Now let us turn to the facts. The plaintiff did not ask for a reformation until the decision of this court construing the mortgage was announced. If he was inexcusably negligent and inattentive to his interests or inexcusably delayed the assertion of his rights in so acting and was therefore guilty of laches, that negligence, inattention and delay must have arisen from his having entertained his belief as to the construction of the language of the mortgage, or from the fact that, entertaining his belief, he unreasonably postponed his resort to legal proceedings. He was not negligent in not openly and to the knowledge of the defendant asserting his claim. Such assertion, we said in *Williams* v. *Wadsworth*, 51 Conn. 277, under similar conditions, was an equivalent of legal proceedings. But, regardless of that principle, his failure to take the course suggested, under the circumstances and with his belief, could not be fairly imputed to him as inexcusable negligence, inattention to his interests, or delay. That such negligence was not exhibited in his holding his belief, we have already had occasion to observe.

Upon this aspect of the case, the opinion in *Stockbridge Iron Co.* v. *Hudson Iron Co.*, 107 Mass. 290, 323, is most pertinent. Of the circumstances there presented it is said : " If the assertion and attempted exercise of rights of mining, by the defendant, after ceasing to carry on its business at Stockbridge and selling its furnaces, was notice to the plaintiff of the claim now made by the defendant, still, supposing this issue to be found for the plaintiff, it was notice of a claim inconsistent not only with the original agreement, but also with the terms and legal effect of the deed, as originally understood by both parties. That the plaintiff

adhered to the understanding and construction which had been common to both, and relied upon that construction of the deed as a sufficient answer to the claims thus made, is not to be imputed as laches, by the defendant, without proof that the plaintiff had become aware of the mistake, or ought to have discovered it, and was guilty of neglect in not doing so and seeking the remedy sooner. It is a sufficient answer to any such position, that the true construction of the clause is a matter of serious controversy and learned argument by counsel in this case."

What other circumstances intervened during the period of the plaintiff's delay, and what other conduct of his was there to emphasize the claim of laches from the delay alone, so that it would be unjust to the defendant that the court should now assist the plaintiff, and that he ought to be estopped from asserting his claim? The equity in the mortgaged premises has disappeared by their depreciation in value. This would have happened in any event and was no fault of the plaintiff. The plaintiff, in February, 1897, surrendered the possession of the premises to Yale College, the first mortgagee. Assuming, as was alleged but not found, that this was done for the purpose of depriving the defendant of any benefit from the possession which he had brought an action of ejectment to obtain, the step was a sagacious and altogether justifiable counter-stroke to an attempt on the defendant's part—which appears to have had no justification in nonpayment of interest on the first mortgage debt, foreclosure of the second mortgage, or otherwise—to violate the spirit and intent of the mortgage agreement as found, and the provisions of the mortgage as the plaintiff interpreted them, and to appropriate the rents and profits of the property to himself while the plaintiff should be compelled to pay the interest on the Yale College loan. By the surrender of possession the plaintiff prevented this result and succeeded in having these rents and profits applied upon this interest, thus defeating an apparent purpose to gain an advantage over him. The plaintiff failed to pay the semi-annual interest payments to the college

which fell due July 23d, 1897, and January 23d, 1898, when they accrued. True, but the college was then in possession, receiving the rents and profits under an express agreement with the plaintiff that he would pay any deficiency, and the plaintiff did, before the foreclosure took effect, adjust and pay all the interest due, so that the defendant had only to pay the principal sum of the loan in order to redeem. As the interest payment of July, 1897, did not fall due until some months after the college began its foreclosure proceedings, these latter cannot be charged to the account of the nonpayment. Foreclosure proceedings were begun by the college and the defendant foreclosed. These circumstances were only the natural incidents attending the status of junior incumbrancer, which status the defendant voluntarily assumed, and he was not deprived of the full right which he contracted for when he consented to take his security subject to the principal of the first mortgage. He was given the privilege of redeeming upon the payment of that sum. The note maker died insolvent. This again was another incident of the situation which the defendant accepted, and for which the plaintiff was not responsible. All these intervening circumstances which are relied upon, it will be seen, are those which are liable to be involved in every acceptance of a second mortgage, and the possibility of which the defendant must have contemplated when he accepted such a mortgage. The plaintiff did not guarantee against their occurrence, and he cannot be held responsible if the defendant failed to protect any interest or equity he may have had. The defendant was acting with full knowledge of his true position. If he has suffered, he has done so not through being misled in his ignorance, but in an endeavor to effectuate his unlawful design to impose a liability upon the plaintiff which was not his and, by necessary implication, known not to be his. If the defendant acted as he would had he conceded the obligation upon him to be as he assumed it, he has not suffered by any failure on the plaintiff's part to seek a reformation. If he has acted differently, with the knowledge that was his, he has

only himself to blame for the result. It is clear that upon every ground, therefore, the defendant is not in a position to avail himself of any claim of laches or estoppel.

The defendant contends that the plaintiff, having rested his defense in the former case upon the mortgage as it was, must be held to have elected that position to the loss of the one now asserted. The doctrine of election has no application to the situation. An election is the choice between two or more courses of action, rights or things, by one who cannot enjoy the benefit of both. 2 Story's Equity Jurisp. (12th ed.) § 1075. The case of *Botsford* v. *Wallace*, 72 Conn. 195, is precisely in point.

The defendant says that the plaintiff cannot have the relief prayed for without putting the defendant back in *statu quo*. This claim needs no further consideration than is involved in what has been said upon the subject of laches and estoppel.

The defendant's claims of error arising from the allowance of a motion to erase certain portions of the answer, and the overruling of the demurrer to the complaint for the reason that the desired correction of the mortgage was not stated with sufficient definiteness, are not of the substance of the case and need not be considered.

The motion to rectify the appeal, so that it should appear that the claim was urged upon the trial court that until the execution of the mortgage there was no enforceable agreement between the parties, and that the defendant had the right at any time theretofore to decline to complete the transaction unless certain language was embodied therein, as the defendant testified was the fact, does not call for consideration. The finding as to the intent of the parties in the execution of the mortgage, and at the time of its delivery, renders the desired statement of additional claim of law unimportant, in the absence of information that the court did not accept the proposition as correct in arriving at the conclusion of facts found. The denial of the elemental principle propounded is certainly not to be presumed. Without doubt the defendant had full advantage of it.

An examination of the evidence fails to disclose that any fact material to any question of law has been found without evidence, or that any admitted or undisputed fact has been omitted from the finding. The defendant's brief seems to mistake what is meant by an undisputed fact. Absence of direct contradiction by the mouth of a witness does not make a fact undisputed within the meaning of the rule. Rules of Court, p. 93, § 10. The trial court is at liberty to discredit any witness or multitude of witnesses, if it deems that it has cause to do so. It is one of the important functions of a trier to determine the relative credit to be given to oral evidence. Otherwise false testimony would be a more serious factor in the administration of justice than it now is.

Nor are we able to discover that the court in finding the material fact of mutual mistake, and in decreeing the reformation, was unmindful of the principles that the evidence tending to show such a mistake ought to be weighed with great care, and the fact only found upon clear and most convincing proof, and that the correction should be made only in the exercise of great caution. The repeated declarations of this court were called to the attention of the trial court, and we cannot assume that it did not act in strict conformity to its legal duty thus made known to it. The contrary cannot be made to appear from the evidence alone. The extent to which the affirmative proof is to be regarded as convincing or overwhelming, depends very largely upon the degree of credit which the court attached to contradictory testimony. That is a province which we cannot invade.

The rulings of the court upon the admission and rejection of testimony were either correct or harmless to the defendant. The only one which calls for notice was made when the defendant's wife was offered as a witness in his behalf. She testified in response to direct inquiries that the defendant was at a certain time of sound mind. The issue as to his sanity at that time was a material one. Counsel then, for the purpose of giving added force to this expression of opinion, sought to show by her that within a few days subsequent to the date in question she had, with the advice of her coun-

Allis *v.* Hall.

sel, given the defendant a power of attorney involving the care and disposition of her entire property. This attempt to reinforce the opinion of the witness, and, incidentally, show the opinion of her counsel without his testifying, was, upon well established principles and for most convincing reasons, one which the court was bound to restrain.

A careful examination fails to disclose that the claim appearing in the defendant's brief—to the effect that the judgment for an injunction, in so far as it relates to the former judgment for costs, is erroneous—was either made to the trial court or assigned as a reason of appeal. It is therefore not entitled to consideration.

The claim that costs should not be awarded to the plaintiff in this action was made below, and the allowance of such costs is made a reason of appeal. The court committed no error in this respect.

The refusal of the clerk to print that portion of the record which embodied the evidence offered in the Superior Court, until the cost thereof should be paid to him, was justified. The burden of the cost of such printing is by no circumvention to be cast upon the State. This evidence was no true part of the finding, notwithstanding the ingenious effort to make it so appear. It had no place or purpose in the record, save as an incident to an effort to secure a review and correction of the finding of facts. It could not be of service in deciding any question of law.

There is no error.

In this opinion the other judges concurred.